## Moore v. City of Lexington et al.

December 7, 1948.

Rehearing denied March 25, 1949.

Andrew S. Moore for appellant.

Leer Buckley and A. E. Funk, Jr. for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

Appellant is the owner of the property located on the west side of Broadway between second and third streets in the City of Lexington, known as 253 and 255 North Broadway, title to which he acquired from Edith Berryman Van Meter by deed dated July 26, 1945. The

lot has a width of 77 feet on Broadway and extends back 210 feet to an alley 10 feet wide. On the front portion of this lot, distant 18 feet from Broadway, is a large brick residence built in 1881 which has now been converted into four apartments, this conversion having been made previous to its purchase by appellant. On the rear of this lot at its northwest corner is a brick building 32.2 feet in length, 28.2 feet in width and 20 feet high which was built for and used as a carriage house from the time of its construction in 1881 until the time when carriages were displaced by automobiles, since which time it has been used as a garage. The building is two stories high, the upper floor being divided off into three rooms, and was used as living quarters by the coachman in the horse and buggy days, later by the chauffeur and perhaps still later as living quarters by servants of the owners of the big house. The last occupant of these quarters was a colored nurse employed by Mr. Charles H. Berryman, who lived in one of the apartments in the main building with his daughter, Mrs. Van Meter. This nurse and her husband, who was employed elsewhere in or around Lexington, by agreement with Mrs. Van Meter, continued to live in the servants' quarters for about a year after Mr. Berryman's death and the acquisition of the property by appellant, rent free. There has never been any commercial renting of the three-room apartment above the garage.

In August 1946, appellant applied to the building inspector of the City of Lexington for a permit to repair and improve the second floor over the garage and to convert it into a modern efficiency apartment for commercial renting. The application was refused on the ground that its contemplated use as a residence would violate the zoning ordinance of the City of Lexington which, among other things, forbids residences in a rear yard except under certain conditions. Upon appeal to the Board of Adjustment and after a hearing conducted by that body, permit for the contemplated improvement and conversion was denied. This suit was then filed in Circuit Court by appellant, owner of the property, for a review of the action of the Board of Adjustment and for a mandatory injunction requiring the issuance of the permit. After oral argument and submission on briefs of counsel, demurrer to the petition was sustained

and the petition was dismissed upon plaintiff's failure to plead further. From that judgment, which the parties have treated as a judgment on the merits and which we shall treat as such, appellant prosecutes this appeal.

## The Zoning Ordinance.

The zoning ordinance in effect at the time this application was made was adopted by the City of Lexington in 1930, and was extended in 1942 to include all territory in Fayette County within two miles of the city limits. The pertinent sections of the ordinance read as follows:

"Section IV—General Provisions—(1) (Zoning Affects every Structure and Use) Except as hereinafter specified, no building, structure or premises shall hereafter be used and no building or part thereof or other structure shall be erected, raised, moved, reconstructed, extended, enlarged or altered, except in conformity with the regulations herein specified for the district in which it is located.

"(6) (Rear Dwellings Prohibited) No lot shall contain any building used as a residence unless such lot abuts for at least 20 feet on at least one street, or unless it has an exclusive unobstructed easement of access or right of way at least 15 feet wide to such street, and there shall not be more than one building for each such frontage or easement, except that a common easement of access at least 40 feet wide may be provided for three or more such buildings.

"No building in the rear of a principal building on the same lot shall be used for residence purposes except only for domestic employees of the owners or of the tenants of the principal building, unless in addition to conforming to the open space requirements in this Ordinance for a principal building, it shall also conform with the above street frontage or easement of access requirements, and for the purpose of determining the front yard in such case, the rear line of the rear yard required for the principal building shall be considered the front lot line for the building in the rear.

"Section VI (D) (1) (Side Yards Required) In Every Residence "B" District there shall be a side

yard along each side lot line on every lot except as hereinafter provided. The least width of any side yard and the least sum of the widths of both side yards shall be as follows:

| No. of Stories | Side Yard-Least Widths | Sum of Widths of Both Side Yards |
|---|---|---|
| 1 and 1½ | 5 feet | 12 feet |
| 2 and 2½ | 6 feet | 15 feet |
| 3 | 8 feet | 20 feet |

For each resident family in excess of two families two feet shall be added to the herein prescribed least widths of each side yard at each story level."

## Is Ordinace Violated?

It is shown by the proof and the plat filed as an exhibit that the main building on the front part of the lot has a width of 50 feet leaving a space of 12 feet between the building and the lot line on the north side and a space of 15 feet between the building and the lot line on the south side. This is all yard space. There is no road or driveway on either side of the building leading back to the garage although there is a sidewalk on one or perhaps both sides of the house and back to the garage. It is obvious, therefore, that there could be no "exclusive, unobstructed easement or right of way at least 15 feet wide to a street," as required by Sec. IV-6 of the ordinance, in order to reach Broadway through the yard of the main building from the proposed apartment. Especially would this be true if Sec. VI-D-1 of the ordinance is complied with which, as quoted above, requires every residence in a "B" district, which this is, to have side yards of 6 feet or a total of 15 feet in width for both side yards for a 2 story building such as occupies the front part of this lot. These side yards are further cut down by the fact that the main building is a four-family building requiring 2 feet of additional width for each side yard for each family in excess of two families.

The only street other than Broadway to which occupants of this proposed apartment could have access is Third St. which lies 70 feet east of the garage apartment and the only possible access to Third Street is over the paved alley which extends south from Third Street a distance of 231 feet. This alley is at the rear of appel-

lant's lot and is a dead-end service alley for his lot and three other lots which abut thereon. This alley is sometimes referred to in the record as a private alley, and it is probably such, as in the deed to appellant, it is referred to in the description which says "with the right of passway in said alley to and from Third Street in the manner stated in the deed from Carneal to Warfield recorded in D. B. 30, page 142, Fayette County Clerk's Office." The manner of and restrictions as to its use are not otherwise shown in the record but it does not appear to be a public alley although appellant has access to and the right to use it. This alley is shown on the plat, filed in the record, to be 10 feet wide although there is proof indicating that it is slightly in excess of 11 feet in width. Proof in the record indicates that it is used by the property owners abutting thereon for coal deliveries, for garbage collection and for access to garages that open on the alley. It is clear therefore that this alley, approximately 11 feet wide and now used as a service alley by at least four property owners and even more families because there is more than one family in some of the abutting properties, is not and could not be "an exclusive unobstructed easement of access or right of way at least 15 feet wide to a street" within the meaning of Sec. IV-6 of the above quoted ordinance. It might also be added that the garage building itself does not meet the side yard requirements of Sec. VI(D) (1) because on its north side it joins the Webb property and there is no possibility of a side yard of 5 feet on that side as required by the ordinance.

So much for the strict legal requirements of the ordinance. It seems clear that if the zoning ordinance is to be complied with in the respects above set out, it will be impossible for appellant to alter the garage building and adapt it for commercial renting as a residence. If the application for this permit is to be issued, it must be done by the Board of Adjustment which Board is set up and operates under the procedure outlined in Section XVI of the ordinance. That Board hears and decides appeals from the decisions of the building inspector who must operate under the strict terms of the ordinance. Under Sec. XVI(5) the Board of Adjustment is empowered: "To authorize upon any such appeal any such variance from the terms and provisions of this Ordi-

nance as will not be contrary to public interest and as shall be in harmony with the general purposes and intent of this Ordinance where owing to special conditions, a literal enforcement of this Ordinance would result in unnecessary hardship and so that the spirit of this Ordinance shall be observed and substantial justice done.''

Any property owner may appeal to this Board of Adjustment and have a hearing on his particular case, as appellant did in this case. At this hearing appellant introduced proof to show that the garage building, which is built of brick, is still structurally sound; that no structural changes were contemplated in the building except removal of the stairway, leading to the second floor, from the interior to the exterior of the building; that the only changes to be made were on the interior of the second floor which would be modernized by installation of a bathroom and such other improvements as would be necessary to convert the present three-room servants' quarters into an efficiency apartment at a cost of $4,000 to $5,000. The proof shows that appellant paid about $18,000 for the entire property; that he lives in one of the apartments in the main building on the lot and rents the other three out for a total of $145 per month; that he expects to rent the proposed apartment over the garage for $75 per month. Several witnesses for the appellant, including Mr. Skillman, an official of the City of Lexington, testified that in their opinion the neighborhood would not be injured or disadvantaged by the proposed changes in the building and its use for rental as an apartment would not be detrimental.

The principal protest testimony came from neighbors who objected to the changes because they felt that it would result in a breakdown of zoning plans and would lower property values of the surrounding property; that it would result in further congestion in the area, including the increase in the use of the common alley used by most of them. The nearest neighbor also had fears of undesirable tenants now or at some future time. At the conclusion of these hearings, the Board of Adjustment found that appellant would suffer no hardship through denial of the application and refused the permit. Its decision was upheld by the Circuit Court as heretofore shown.

### Basis of this Appeal.

Appellant bases his appeal on three principal grounds and vehemently supports them with 105 pages of brief, original and reply, bristling with criticism of the Board of Adjustment and the decision of the lower court and of the witnesses who testified against him and the neighbors who are seeking to prevent this conversion. The three grounds upon which he relies for reversal are (1) that the application of the ordinance to this property by the Board of Adjustment and the judgment of the court below are in violation of the Constitution of Kentucky, the Constitution of the United States, especially the Fifth and Fourteenth Amendments thereof and the Bill of Rights. (No mention is made of the Magna Charta); (2) that the Board of Adjustment in applying the ordinance to his property is applying it "retrospectively"; (3) that the decision of the Board of Adjustment and the Fayette Circuit Court is arbitrary, capricious, dictatorial, discriminatory and a denial of equal protection of the law to appellant. These will be considered in the above order.

I. Zoning laws have become a necessity in modern urban and suburban life and are now in existence in practically all cities. They have been generally upheld as constitutional under the police power. The philosophy behind them, the reasons for their existence and the ground upon which they have been upheld are well set out in the leading case of Village of Euclid, Ohio, v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; and in Fowler v. Obier, 224 Ky. 742, 7 S.W.2d 219, in which latter case the constitutionality of the basic Kentucky legislation and a zoning ordinance of the City of Louisville was upheld. It will therefore not be necessary to discuss these principles.

In his brief appellant makes no attack on the constitutionality of zoning laws in general or the Lexington Ordinance in particular except as it is being applied in this particular case. He concedes that under its police power a city may regulate such matters where public health, public morals, public safety or the general welfare are involved but he insists that none of these are involved in his proposal to convert the servants' quarters over the garage on the rear of his yard into an im-

proved apartment for commercial renting. He therefore insists that the ordinance is unconstitutional insofar as it attempts to do so.

We cannot agree with appellant that the provisions of the ordinance, heretofore quoted and which in effect would bar him from converting servants' quarters over a garage into commercial rental property, can have no relation to the public health, safety or morals or the general welfare. In enacting such ordinance the legislative body of a city had the right to and no doubt did consider that residences in the rear yards of other buildings, without adequate means of access and ofttimes on an unsightly alley and without proper open spaces, would result in increased congestion and would in many cases be occupied by undesirable tenants and ultimately result in slum conditions and affect the public health and general welfare of a community. It can well be argued, as appellant does, that it is better that the upper floor of this garage be improved and rented out as an efficiency apartment than that it remain in its present condition, unimproved, as the residence of servants of the owners of the main building. However, it is a matter of common knowledge that the old custom of servants living in servants' quarters on the place where they work is almost obsolete and the lawmaking body of the City may have considered that future occupancy of such quarters for that purpose presented no problem such as commercial rental of places of this type would entail. At any rate, such matters of policy are for the legislative bodies, not the courts to determine. We cannot say that appellant's constitutional rights are invaded by the ordinance in question which seems to us to have been within the police power of the legislative body enacting it.

II. Appellant contends that the case should be reversed because the application of the ordinance to the situation involved in this case would have a retrospective effect. He bases this contention on the fact that the upper floor of the garage in question has been used as living quarters since it was built over 60 years ago and to prevent its use now as a residence would be a retrospective application repugnant to all legal principles. Appellant's complaint would be well founded if the ordinance sought to prevent the use of the upper floor of

this garage as living quarters, that is, for *any* residential purpose, because it was used for such purpose when the zoning ordinance was enacted in 1930, and to prohibit its use for the same purpose after that date would be retrospective. But the ordinance does not do this. It specifically provides that it may continue to be used for residence purposes by domestic employees of the owner of the principal building. What the ordinance does is to forbid its use for any other residential purpose unless, in addition to conforming to the open space requirements of the ordinance for the principal building, it shall also conform with the street frontage or easement of access requirements of the ordinance. As has been shown in an earlier part of this opinion, the building does not meet these open space and exclusive access requirements. Therefore the Board of Adjustment followed the ordinance and denied appellant the right to alter the property and extend its use in violation of Sec. IV-6, above quoted. We do not think its action in doing so, or the ordinance itself, was retrospective in effect. Certainly it was not as to appellant who purchased the property in 1945 at which time the zoning ordinance had been in effect 15 years.

III. The Board of Adjustment has and should have a large discretion in the application of zoning ordinances and its decisions should not be disturbed unless its action is without reasonable foundation or it has acted in an arbitrary, capricious or unlawful manner. This Board is an administrative body composed of local citizens familiar with local conditions and serving generally without pay in order that the modern zoning laws, so essential in modern urban life, may be fairly applied and administered without fear or favor. Their decision is entitled to great weight. Likewise entitled to great weight is the decision of the Chancellor who is familiar with local conditions and who reviewed the decision of the Board. With these two concurring on the facts involved and the decision denying appellant the permit, this Court should not disturb their decisions unless an error of law has been committed or their decisions are based on an arbitrary or irrational exercise of power.

In exercising its power of adjustment to meet individual situations, the Board may not do violence to the

spirit of the ordinance and, in effect, repeal its provisions. To do so would be legislation, a power which it does not have as an administrative body. As was said by this Court in Bray v. Beyer, 292 Ky. 162, 166 S.W.2d 290, 293, in construing a section of an ordinance similar to Sec. XVI(5), above quoted: ''However, the power of authorizing special exceptions to and variations from the general provisions of the zoning law is designed to be exercised only under exceptional circumstances and not for the purpose of amending the law or changing its scheme in essential particulars such as making changes in boundary lines of districts or authorizing the erection of a building forbidden by the zoning law to be erected. We think the action of the Board of Adjustment in the instant case (authorizing variations from the zoning ordinance) violated the spirit of the ordinance and amounted to legislation by it. Furthermore, there is no showing that a literal enforcement of the provisions of the ordinance with respect to the Beyer lot will result in unnecessary hardship.'' (Our parenthesis.)

We think, as the Board found, that no great hardship will result to appellant from a denial of a permit to change the servants' quarters over the garage into an apartment for commercial rental. True he will be deprived of some additional revenue from the property which he purchased in 1945 at $18,000 and from which he is receiving rentals of $145 per month and the personal use of another apartment which rents at $55 per month or a total return of $200 per month. If mere denial of additional revenue should be considered a hardship which would justify variations from the terms of a zoning ordinance, the whole scheme of zonal planning could be wrecked. We do not think deprival of additional revenue under the facts in this case is a hardship within the meaning of the zoning laws.

It is perhaps true, as some of appellant's witnesses testified at the hearing, that no harm would be done in this case by the change contemplated. It may even be a temporary advantage to improve the second floor of this garage and convert it from use as servants' quarters to an efficiency apartment to relieve the present housing shortage. However, the Board, taking the long view, may have considered that to let down the bars

and make an exception in this case would lead to like changes in other garages and old carriage houses in this vicinity which would ultimately reduce the open spaces and increase the congestion. They may have considered that when conditions become normal, desirable tenants would not want to live over garages and carriage houses, often located on unsightly alleys, a fact which could lead to slum-like conditions. Such matters are within their discretion. We cannot say that in the exercise of this discretion, they acted in an arbitrary, capricious, dictatorial or discriminatory manner against appellant or that the court erred in upholding the decision of the Board.

For the reasons herein indicated, the judgment of the lower court is affirmed.

Judgment affirmed.

Chief Justice Sims dissenting.

I dissent from the decision upon the ground that it is a retroactive application of the zoning ordinance. Its own terms seem to make its application prospective only. But whether so or not, a retroactive application could not be constitutionally made. Darlington v. Board of Councilmen of the City of Frankfort, 282 Ky. 778, 140 S.W.2d 392, 393. The apartment was occupied as a residence for many years by domestic servants and later by a colored man, who was employed off the premises, and his wife, who was the personal attendant of the owner and occupant of the main residence, an invalid, and continued that occupancy for a year after his death. The owner seeks only a permit to improve the interior of the apartment that it may be rented by white people. There would be no real or substantial difference in the use of the property.

Judge Thomas and Judge Latimer join in this dissent.