John L. KLINE et al., Appellants,

v.

LOUISVILLE & JEFFERSON COUNTY BOARD OF ZONING ADJUSTMENT AND APPEALS et al., Appellees.

Court of Appeals of Kentucky.

June 19, 1959.

Edwin A. Schroering, Jr., Louisville, for appellants.

James L. Taylor, Robert T. Burke, Jr., William E. Scent, Louisville, for appellees.

STEWART, Judge.

This appeal is by certain property owners from a judgment upholding an order of Louisville and Jefferson County Board of Zoning Adjustment and Appeals (hereinafter referred to as "the adjustment board"). The order, and the judgment supporting it, if carried out, would permit the establishment of an off-street parking area in the southerly portion of a certain lot, which was previously zoned for one-family residential purposes.

Bon Air Estates, Inc., owns Lots Nos. 162 through 169 and Lot No. 170 in a large residential subdivision known as Bon Air Estates No. 2, on the southeastern outskirts of Louisville, in a general area bounded by Watterson Expressway, Taylorsville Road, Hikes Lane and Bardstown Road. Lot No. 170 is encircled by Lots Nos. 162 to 169, inclusive, and the latter are separated from the former by streets. By ordinance dated December 27, 1956, the board of aldermen of the City of Louisville, the zoning authority of all lands situated within the city's corporate limits (wherein lies the land in this case), zoned all of Lot No. 170 as an "E" Commercial District, except for the southerly portion of that lot, which was left as an "A" One-Family District. The board of aldermen, upon the request of Bon Air Estates, refused to rezone the property in controversy in this appeal.

Bon Air Estates contemplates building a neighborhood shopping center on that portion of Lot No. 170 commercially zoned. On June 17, 1957, it applied to the adjust-

ment board for a permit to establish an off-street parking area in the southerly portion of Lot No. 170 and on three of the above-mentioned surrounding lots, relying upon subsection (8) of Section 93–20 of the zoning ordinances of the City of Louisville. This subsection empowers the adjustment board: "To permit the establishment of an off-street parking area in a residentially zoned district where such facility would relieve traffic congestion on the streets." This ordinance provision required such parking area to be located and constructed in accordance with certain specifications which we need not dwell upon here.

Briefly stated, Section 93–20 of the zoning ordinances of the City of Louisville bestows upon the adjustment board two general powers. One is the authority to grant "variances" where and when the strict enforcement of a zoning ordinance would subject the owner or possessor of land attempting to comply with it to an unwarranted hardship. It is asserted a variance is not involved in this case. The other or second power, which Bon Air Estates contends *is* the only point involved in this case, is the authority to grant an "exception" under the conditions specifically set forth in subsection (8) of Section 93–20 of the zoning ordinances heretofore quoted.

On June 26, 1957, the adjustment board duly approved the application of Bon Air Estates affecting the southerly portion of Lot No. 170 and granted a permit to construct the off-street parking area in conformity with the provisions contained in subsection (8) of Section 93–20 of the zoning ordinances, but denied such an application as to the other lots. Thereafter, appellants, representing some three hundred residents of Bon Air Estates No. 2, sought and secured a trial of this proceeding de novo in circuit court under KRS 100.085.

On October 17, 1957, the lower court found that Bon Air Estates had begun preparations to erect a shopping center on part of the commercially-zoned northern portion of Lot No. 170; that there would be traffic congestion in the immediate vicinity of the shopping center when it was completed and in full operation; and that the establishment of the parking area in the southerly portion of Lot No. 170 would relieve such congestion. The opinion of the trial judge also found that subsection (8) of Section 93–20 of the zoning ordinances specifically allowed such an off-street parking area to be established. A judgment was accordingly entered allowing the parking area to be built.

█ It is settled law in this jurisdiction that the adjustment board is not a planning and zoning agency. On the contrary, it is an administrative body which only supplies the "safety valve" function for making a zoning plan workable. Thomson v. Tafel, 309 Ky. 753, 218 S.W.2d 977. It is also a danger well recognized that an adjustment board may, by resort to the use of variances or exceptions, amend a city ordinance in such a way as to render it useless, or even nullify the zoning ordinance itself.

Appellants cite two significant Kentucky cases which they compare with the instant case and claim they control the determination of the issue before us. The first, Bray v. Beyer, 292 Ky. 162, 166 S.W.2d 290, concerned one Beyer and his wife who were issued a building permit to erect a house in a residential district in the City of Paducah. When the house under construction began to take on the appearance of a gasoline filling station, those living in the immediate vicinity protested, and the Beyers then sought forthwith to have the property rezoned for both business and residential purposes. The City Planning and Zoning Commission of that city refused the application of the Beyers to have the property rezoned in accordance with their application, and the City of Paducah also enjoined the continued erection of the filling station. The Board of Adjustment of Paducah, however, when the Beyers thereafter brought their case before it, granted them a building permit under the theory that

the strict enforcement of the zoning law would result in an unnecessary hardship. This Court refused to uphold the course of action pursued by the Board of Adjustment and said:

"The power to zone property within the city belongs to the legislative department of the city, and that power has not been and cannot be delegated to the Board of Adjustment * * *, yet if the Board of Adjustment may grant special exceptions or authorize variances, such as the one in the present case, it may eventually destroy the restrictions imposed by the zoning ordinance and, in effect, amend or repeal the ordinance."

In the recent case of Arrow Transportation Co. v. Planning and Zoning Commission of the City of Paducah, Ky., 299 S.W. 2d 95, 96, a case on all fours with the Beyer case, that commission refused to rezone a portion of certain property from B–3 to M–2. The Board of Adjustment there, upon application made to it, granted the relief sought on the same theory of hardship as that advanced in the Bray case, supra. The circuit court reversed. In affirming the lower court's holding, this Court, following the reasoning of the Bray case, said:

" * * * it is apparent the Board assumed authority it did not possess, that is, it granted an application which, if allowed, would in effect change the property from a B–3 zone to an M–2 zone."

See also Moore v. City of Lexington, 309 Ky. 671, 218 S.W.2d 7, and Sims v. Bradley, 309 Ky. 626, 218 S.W.2d 641.

In the two preceding cases variances were resorted to by property owners in an undertaking to accomplish the end desired. On the other hand, the instant case concerns the request for and the granting of an exception, denominated as such. This Court has never heretofore seen fit to clearly distinguish between the oft-used words "exception" and "variance"; furthermore, it has, in practically every instance, employed the two expressions as synonymous. And this has been done despite the fact that the zoning statutes of this state, the opinions of other jurisdictions on this point and the text book writers on zoning law make a clear distinction between the power exercised in respect to granting a variance as compared to that set in motion in the allowance of an exception.

We turn now to examine the Kentucky zoning statutes relative to the powers given to the Board of Zoning Adjustment and Appeals of a city of the first class. Subsection (2) of KRS 100.082 is devoted to the board's authority as regards holding hearings on and deciding petitions for special exceptions to the requirements of zoning regulations or restrictions. This subsection in a broad general way provides "for decisions upon other special zoning questions upon which the board is authorized to pass."

Subsection (3) of KRS 100.082 sets forth and sharply limits the board's authority when holding hearings on petitions for and to authorize variances from a strict application of any zoning regulation or restriction so as to relieve an undue hardship in cases where, because of the shape of the tract of land, or some other extraordinary condition, the strict enforcement of the regulation or restriction would cause practical difficulties to the owner of such property. This subsection requires that a variance, when bestowed, "shall comply as nearly as possible in every respect with the spirit, intent and purpose of the zoning plan."

█ It thus appears the Legislature, in the enactment of these subsections, intended a clear demarcation to be maintained between the situations under which a variance may be invoked and those under which an exception may be solicited. This is plainly indicated because each term is specifically dealt with in a separate sub-

section, and the relevant statutory provisions do not denote that variance and exception should be applied interchangeably to any given set of facts. An important difference implicit in these statutory provisos is that an exception may be granted without the showing of any hardship, whereas the existence of a hardship is a condition precedent to the authorization of a variance. Another marked distinction between these two powers, already alluded to, is that subsection (3) of KRS 100.082 narrows in a drastic manner the scope of the application of a variance, while the subsection setting forth the authority under which an exception may be given has been construed to allow the board of aldermen to enumerate and define *by ordinance* those special zoning problems upon which the board of adjustment is authorized to pass.

 A statement of the difference between a variance and an exception is clearly expressed in this language lifted from the case of Mitchell Land Co. v. Planning and Zoning Board of Appeals of Town of Greenwich, 140 Conn. 527, 102 A.2d 316, 318:

> "An exception is not to be confused with a variance. While the two words have often been treated as synonymous, they are readily distinguishable * * * (A) variance may be granted only when the application of the law presents a practical difficulty or imposes an unnecessary hardship upon the property owner. An exception, however, is not * * * contingent upon the existence of either difficulty or hardship. In the case of a variance, a literal enforcement of the regulations is disregarded; the conditions permitting an exception are found in the regulations themselves and, furthermore, those conditions may not be altered * * *. Speaking broadly, then, a variance is authority extended to the owner to use his property in a manner forbidden by the zoning enact-

ment. An exception, on the other hand, allows him to put his property to a use which the enactment expressly permits."

Another excellent statement, drawing a line between the two terms, is found in chap. IX-f-2-(b), p. 814, of Metzenbaum's 1 Law of Zoning.

The closest step this Court has taken toward upholding the granting of an exception as such was in the case of Thomson v. Tafel, 309 Ky. 753, 218 S.W.2d 977, 981. There the adjustment board of the City of Louisville gave a permit to a corporation which allowed the erection of the Louisville Hebrew Home, a philanthropic institution, in an "A" Single Family Residential District. This action was taken by the adjustment board under subsection (3) of Section 93-20 of the zoning ordinances of the City of Louisville. This is the same section, but another subsection thereof, which is involved in the case at bar. Subsection (3) in the Tafel case allowed the location of the following uses in a district from which they are otherwise prohibited by the zoning ordinances of the City of Louisville: "* * * institutions of an educational or philanthropic nature." Although this Court, in sustaining the action of the adjustment board, talked "variance" in the early part of its opinion in the Tafel case, it finally said:

> "* * * the order of the Board was not actually the granting of a variance, but was a granting of the use of property permissible under the zoning ordinance but subject to approval by the Board of Adjustment and Appeals. The order did not change any provision of the zoning ordinance, but merely applied the existing law as the Board was authorized to do * * *."

Exceptions have sometimes been called "conditional use permits". See Metzenbaum, 1 Law of Zoning, chap. IX-f-2-(b), p. 813.

It is believed, consequently, that the action of the adjustment board was correct when it granted an "exception" under subsection (8) of Section 93–20 rather than a "variance", and that it was not necessary under that subsection for the adjustment board to find that a hardship existed, but only that the purpose and intent of the subsection and of the ordinance as a whole would be served and that the facts calling for the application of the subsection existed. In the instant case, the adjustment board's act, sustained by the lower court, would in effect change the use of the southerly portion of Lot No. 170 from a residential to a commercial purpose, but under the expressed authority of granting an *exception* and not under the guise of permitting a *variance*.

In the Bray and the Arrow Transportation Company cases, referred to at length above, and relied upon as determinative of this case, the adjustment board exceeded its authority when it undertook to change the whole plan of the zoning ordinance upon its discretion alone. In the case at bar the board of adjustment did not deviate from the facts and circumstances prescribed by subsection (8) of Section 93–20 when it granted an off-street parking area.

As we have indicated, the authority to grant exceptions spelled out in the ordinance itself is broad but its exercise is not without limitations. The power is undoubtedly intended to be exercised sparingly in cases where practical difficulties arise so as to prevent the placing on property of unnecessary burdens (not hardships) or to subserve the public welfare. Subsection (8) was undoubtedly designed to relieve critical traffic congestion drawn into a residential area by a near-by commercial activity. Such traffic congestion will unquestionably occur when Bon Air Estates erects its shopping center. We believe the provisions of the ordinance under discussion were properly applied in this case.

Wherefore, the judgment is affirmed.