**Courtney BALL, Appellant**

v.

**OLDHAM COUNTY PLANNING AND ZONING COMMISSION; Louise Allen, Administrator of the Oldham County Planning and Zoning Commission; Oldham County Board of Adjustments and Appeals; and Vicki B. Watts, Appellees.**

No. 2010–CA–000284–MR.

Court of Appeals of Kentucky.

Aug. 3, 2012.

D. Berry Baxter, LaGrange, KY, for appellant.

Stuart Ulferts, LaGrange, KY, for appellee, Oldham County Planning and Zoning Commission.

Before ACREE, Chief Judge; STUMBO, Judge; LAMBERT,[1] Senior Judge.

### OPINION

LAMBERT, Senior Judge:

This is an appeal from an order of the Oldham Circuit Court affirming the decision of the Oldham County Board of Adjustments and Appeals ("the Board") to grant a road frontage variance with respect to certain property owned by the Sharon D. Larimore Trust ("the Trust"), the predecessor-in-interest to Appellee Vicki B. Watts. Appellant Courtney Ball—a neighboring property owner who objected to the variance application—argues that the Board's decision was arbitrary and capricious and that the Board failed to make adequate findings in support of that decision. After our review, we affirm.

### Facts and Procedural History

The Trust owned a 10.26–acre tract of land at 3019 North Buckeye Lane in Goshen, Oldham County, Kentucky. The property was zoned AG–1 (agricultural) and CO–1 (conservation) with a land-use designation of "single family residential." The Trust owned a residence on the property, and a private easement on the property's east side allowed access to and from the residence.[2]

In 2006, the Trust filed a request for a variance from Oldham County's zoning road frontage requirements that would ultimately allow the property to be divided into two parcels—one of which would measure approximately eight acres and the other two acres.[3] A variance was required for the proposed division because the county's zoning ordinances required all properties measuring 2.5 acres or more to have a

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes ("KRS") 21.580.

2. This easement was in use before the commencement of the subject proceedings and remains in use today.

3. The Trust also expressed the intent to donate a third lot of 0.24 acres bordering on Buckeye Lane for use as a public right-of-way.

minimum of 300 feet in road frontage.[4] The proposed two-acre tract would retain 354 feet of road frontage on Buckeye Lane and otherwise complied with all zoning requirements, so a variance was required only for the proposed eight-acre tract, which had no road frontage. The Trust contended that a variance was appropriate because the eight-acre tract could continue to be accessed by the private easement and, therefore, needed no road frontage. According to the Trust, the proposed lots were effectively separated from each other by topographical constraints, *i.e.*, a number of rocky cliffs and steep, wooded terrain that made them virtually inaccessible to one another. The Trust also asserted that denial of the variance would deprive it "of the sale of a very appropriate lot for the community it is in."

The Board initially granted the Trust's request for a variance despite opposition from Appellant, who contended that allowing the variance would alter the character of the surrounding area. However, the matter was remanded to the Board following an appeal to the Oldham Circuit Court after the circuit court found that the Board had failed to make adequate findings in support of its decision. The Board conducted another hearing on the variance application on July 19, 2007.

At the hearing, J. Stephen Larimore testified that he lived at the subject property from 1990 until October 2006, when he moved (with his wife) to Louisville, Kentucky.[5] Larimore indicated that his residence was built on the proposed eight-acre lot when he bought the property and that an easement was used to access the property because the terrain effectively divided that lot from the proposed two-acre lot, making it impractical to use the

latter for access. Larimore explained that the eight-acre lot was essentially a plateau and that its slope dropped off steeply as it approached the two-acre lot. As a result, the eight-acre lot could not be accessed from the two-acre lot and vice versa. Larimore determined that it would be too costly to build an access from the road frontage on Buckeye Lane to the residence, so the two-acre lot essentially went unused while the Larimores lived on the property.

Larimore also testified that any home built on the two-acre tract would not block the view from the eight-acre tract and that a home on that site could not be seen from Appellant's property. He further indicated that he did not believe that granting the variance would cause a detrimental effect on the neighborhood by allowing for the creation of smaller lots because other lots in the area were of a similar size. For example, one property in the area was subdivided into tracts as small as one acre. Another subdivision directly across from the subject property included lots that were approximately two acres in size. Therefore, the proposed lots were consistent with the character of the neighborhood. Larimore also noted that while many of the lots in the vicinity had "fallaway" areas, the subject property was uniquely severe in that regard.

Larimore advised the Board that he had been told that the property would be more valuable in two lots than as presently configured, so he was seeking the variance to realize the true value of the property. He testified that because of this, denial of the variance would interfere with the "reasonable use" of the property because it would hinder its sale. Larimore further noted

---

4. The record reflects that the proposed division otherwise complied with all other applicable land-use requirements.

5. Larimore testified that the property was in his wife's name for estate planning purposes.

that the proposed lots would remain residential and nothing would change with the residence, its use, or the easement used to access it.[6] Therefore, the public health, safety, and welfare would not be affected if the variance was granted, and it would not cause a hazard or nuisance to the public.

The Trust also produced Clay Jones—a local builder and realtor—as a witness. Jones testified that the subject property was unique because of the "very steep" thirty- or forty-degree drop-off dividing it. He also opined that it would be prohibitively expensive to build an access to the residence from the two-acre lot and that as a result, the easement was the only feasible access to the eight-acre lot. However, he gave no cost estimate for building such an access. Jones agreed with the Trust that both lots were appropriate for the area and would not change the character of the neighborhood. He further agreed that the subject property was more valuable as two lots than as one.

Appellant testified at the hearing in opposition to the petition for a variance. He indicated that the neighborhood lots were originally at least five acres in size (with the average being ten acres depending on topography) and that most were still that size, but he acknowledged that some had subsequently been divided and that there were no deed restrictions on lot size. Appellant expressed a concern that granting the variance—while perhaps not changing anything about the character of the neighborhood by itself—could lead to a "ripple effect" affecting the integrity of the area in the future. Appellant also noted that the Larimores were fully aware of the property's characteristics when they purchased it and of the applicable zoning requirements.

Following the hearing, the Board voted (four to one) to grant the Trust's application for a road frontage variance and made the following "Findings and Decision" in support of its determination:

Move to approve the variance because as we have discussed today it will not adversely affect the public health, safety, or welfare because [it] will not alter the essential character of the general vicinity, will not cause a hazard or nuisance to the public, and will not allow an unreasonable circumvention of the requirements of the zoning regulations because there has been no testimony today that any of these criteria would be violated[.] [T]he cliffs and slopes on the property are unique and therefore the requested variance arises from special circumstances which do not generally apply to land in the general vicinity or in the same zone[.] [A]lso the steep slopes make it cost prohibitive to build an access across the property[.] [I]n addition the strict application of the provisions of the regulation would deprive the applicant of the reasonable use of the land or would create an unnecessary hardship on the applicant, because the applicant bought the property and did not know the requirements of dividing it and denying this would deprive him of the ability to sell the land as a separate lot thus denying him reasonable use of the land.

On August 17, 2007, Appellant filed an Appeal and Complaint for Declaration of Rights in the Oldham Circuit Court in which he challenged the Board's decision.[7] Appellant specifically contended that the Board's decision was not supported by substantial evidence and that the Board had failed to make adequate findings of fact or conclusions of law in reaching its decision. Following briefing and a hear-

---

6. Sharon Larimore also testified and adopted her husband's testimony as her own.

7. The appeal was brought pursuant to KRS 100.347.

ing, the circuit court entered an order affirming the decision of the Board to grant the variance. This appeal followed.

### Analysis

On appeal, Appellant again argues that the Board's decision to grant the Trust's application for a road frontage variance was not supported by substantial evidence and that the Board failed to make adequate findings of fact in support of its decision. For reasons that follow, we disagree with both arguments.

▇ KRS 100.241 grants the Board "the power to hear and decide on applications for variances" and allows the Board to "impose any reasonable conditions or restrictions on any variance it decides to grant."[8] KRS 100.243 sets forth the findings and considerations that must be made before the Board may grant a variance:

(1) Before any variance is granted, the board must find that the granting of the variance will not adversely affect the public health, safety or welfare, will not alter the essential character of the general vicinity, will not cause a hazard or a nuisance to the public, and will not allow an unreasonable circumvention of the requirements of the zoning regulations. In making these findings, the board shall consider whether:

(a) The requested variance arises from special circumstances which do not generally apply to land in the general vicinity, or in the same zone;

(b) The strict application of the provisions of the regulation would deprive the applicant of the reasonable use of the land or would create an unnecessary hardship on the applicant; and

(c) The circumstances are the result of actions of the applicant taken subsequent to the adoption of the zoning regulation from which relief is sought.

(2) The board shall deny any request for a variance arising from circumstances that are the result of willful violations of the zoning regulation by the applicant subsequent to the adoption of the zoning regulation from which relief is sought. "This section demonstrates a bias against variances, and the burden of proof in convincing the board is on the one seeking the variance." *Bourbon County Bd. of Adjustment v. Currans,* 873 S.W.2d 836, 837 (Ky.App.1994). Thus, in order to justify a variance, an applicant must present proof adequate to meet the criteria set forth in KRS 100.243.

With these guiding principles established, we first address Appellant's argument that the Board failed to make adequate findings of fact in support of its decision to grant the requested variance. The Supreme Court of Kentucky has held that "[t]he legislative limits on the grant of variances [set forth in KRS 100.243] are *not* mere technicalities. The system delineated sets forth specific factors that the Board must consider and findings that must be made." *Louisville & Jefferson County Planning Comm'n v. Schmidt,* 83 S.W.3d 449, 454 (Ky.2001). Therefore, adequate findings of fact in compliance with KRS 100.243 are required before the Board may grant a variance.

With this said, we have previously held that "[i]n making these findings, the board is not held to strict judicial standards." *Currans,* 873 S.W.2d at 838. Instead, the Board's findings are adequate if they include "sufficient information to afford a

---

**8.** KRS 100.111(24) defines "Variance" as "a departure from dimensional terms of the zoning regulation pertaining to the height, width, length, or location of structures, and the size of yards and open spaces where such departure meets the requirements of KRS 100.241 to 100.247."

meaningful review as to the arbitrariness of the board's decision." *Id.; see also Caller v. Ison,* 508 S.W.2d 776, 777 (Ky. 1974). While the Board's findings in this case are perhaps not extensive or numerous, under the circumstances we do not believe that they are so sparse or "bare bones" in nature to compel us to set them aside as insufficient. We acknowledge, though, that the question is a close one and in the case of more contradictory evidence might have been decided differently.

KRS 100.243 generally requires a board of adjustment to make findings as to four issues in considering an application for a variance: (1) whether the granting of the variance will adversely affect the public health, safety, or welfare; (2) whether the granting of the variance will alter the essential character of the general vicinity; (3) whether the granting of the variance will cause a hazard or a nuisance to the public; and (4) whether the granting of the variance will allow an unreasonable circumvention of the requirements of the applicable zoning regulations. KRS 100.243(1). Here, no suggestion was made that the variance in question could adversely affect the public health, safety, or welfare or that it would cause a hazard or nuisance to the public (beyond Appellant's personal objection). Therefore, we fail to see how more extensive findings as to these issues would have been helpful or even possible.

■ We *are* somewhat troubled by the fact that the Board failed to make more specific findings regarding whether the granting of the variance would alter the essential character of the general vicinity, but we note that the evidence was uncontroverted in that regard. The testimony reflected that the proposed lots would retain their rural residential status and that the eight-acre tract requiring the variance would retain the use of an established access easement and otherwise met all zoning requirements. Testimony also reflected that other lots in the area were of a similar or smaller size than the proposed lots and that the two-acre lot met all road frontage and zoning requirements. Consequently, while more specific findings obviously would have been preferable, in light of the undisputed testimony given at the hearing we are loathe to remand this matter to the Board and decline to do so.

■ As to the question of whether the granting of the variance would allow for an unreasonable circumvention of the requirements of the zoning regulations, we believe that the Board adequately addressed this issue with the remainder of its findings. For instance, the Board noted that the "cliffs and slopes on the property are unique and therefore the requested variance arises from special circumstances which do not generally apply to land in the general vicinity or in the same zone" and that "the steep slopes make it cost prohibitive to build an access across the property[.]" The Board further noted that denying the variance would deprive the Trust "of the ability to sell the land as a separate lot thus denying [it] reasonable use of the land." These findings reflect that the Board considered the factors set forth in KRS 100.243(1)(a) through (c).

■ Appellant also complains that the Board failed to make adequate findings with respect to KRS 100.243(2), which provides that "[t]he board shall deny any request for a variance arising from circumstances that are the result of willful violations of the zoning regulation by the applicant subsequent to the adoption of the zoning regulation from which relief is sought." However, the record reflects that no evidence of "willful violations of the zoning regulation" on the part of the movant was presented in this case. Had the movant actually divided the ten-acre

parcel and sold a portion of it before seeking a variance as to the remainder, Appellant could have made a reasonable argument in this regard. However, this did not occur here. Instead, at the time this matter was presented to the Board and to the circuit court, the ten-acre tract remained intact. Consequently, given a complete lack of evidence, we fail to see how the Board committed reversible error by failing to make a finding of fact regarding this issue.

■ Being satisfied that the Board's findings of fact were adequate in this case, we next turn to Appellant's contention that the Board's decision was not supported by substantial evidence. Because the Trust (and, by extension, Appellee Watts) was seeking a variance from the applicable zoning regulations, it bore the burden of proof below and the following standards of review apply on appeal: "An administrative decision granting relief to one having the burden of proof must be supported by findings based upon substantial evidence. Without such support, the decision is arbitrary and cannot weather judicial review." *Currans*, 873 S.W.2d at 838 (footnote omitted). "Substantial evidence" has been defined as being "evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *O'Nan v. Ecklar Moore Exp., Inc.,* 339 S.W.2d 466, 468 (Ky.1960); *see also Kentucky State Racing Comm'n v. Fuller,* 481 S.W.2d 298, 308 (Ky.1972).

■ In weighing the substantiality of the evidence supporting an administrative decision, "a reviewing court must hold fast to the guiding principle that the trier of facts is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses appearing before it." *Bowling v. Natural Res. & Envtl. Prot.*

*Cabinet,* 891 S.W.2d 406, 409–10 (Ky.App. 1994). Thus, "although a reviewing court may arrive at a different conclusion than the trier of fact in its consideration of the evidence in the record, this does not necessarily deprive the agency's decision of support by substantial evidence." *Id.* at 410. Moreover, on determinations of fact "[t]he administrative agency's findings will be upheld even though there exists evidence to the contrary in the record." *Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc.,* 91 S.W.3d 575, 578 (Ky.2002). Ultimately, this Court cannot substitute its judgment on a factual issue "unless the agency's decision is arbitrary and capricious." *McManus v. Kentucky Ret. Sys.,* 124 S.W.3d 454, 458 (Ky.App.2003); *see also Stout v. Jenkins,* 268 S.W.2d 643, 645 (Ky.1954).

Appellant's contention that the Board's decision was not supported by substantial evidence appears to center on a belief that the "mere desire" of an applicant to obtain a variance is not an adequate reason to grant one—particularly where it is motivated by a desire to sell property and obtain a profit. Instead, the applicant must demonstrate an actual "need" for the variance or some kind of "hardship" that would result if the variance were denied. Appellant relies heavily upon the decision of this Court in *Bourbon County Board of Adjustment v. Currans, supra,* for this position, but that case is distinguishable from the one before us.

In *Currans,* the board of adjustment voted to *deny* the applicant's requests for a variance. As a result, the question on appeal was "whether the record compelled a finding in Currans's favor, not whether the board's decision was supported by substantial evidence." *Currans,* 873 S.W.2d at 838.[9] The applicant in *Currans* freely

9. Earlier in *Currans* we clarified the different     standards of review for when an application

admitted that he did not need the requested variances but desired them only to better facilitate the use of the premises in question. *Id.* Because of this, this Court concluded that the record did not compel a finding that the requested variances should have been granted by the board of adjustments. *Id.* at 839.

In this case, however, the Board granted the application for a variance. Therefore, the question is whether the decision was supported by substantial evidence—not whether the evidence actually compelled such a result. Appellant urges us to view *Currans* as holding that a variance should not be granted if it is motivated purely by a desire to obtain a profit instead of by a "need" or "hardship," but we decline to read that decision so broadly. At most, *Currans* holds that where an applicant fails to show that a variance is "needed" and his application is denied, this Court will decline to determine that a variance was compelled by the evidence.

For similar reasons, Appellant argues that *Moore v. City of Lexington,* 309 Ky. 671, 218 S.W.2d 7 (1948), compels a different result. In *Moore,* the then-Court of Appeals upheld a board of adjustment's denial of an application for a zoning variance. The denial was based on the board's finding that the applicant "would suffer no hardship through denial of the application[.]" *Id.,* 309 Ky. at 677, 218 S.W.2d at 11. In affirming the board, the Court first recognized that "[t]he Board of Adjustment has and should have a large discretion in the application of zoning ordinances and its decisions should not be disturbed unless its action is without reasonable foundation or it has acted in an arbitrary,

capricious or unlawful manner." *Id.,* 309 Ky. at 680, 218 S.W.2d at 12. The Court then held as follows:

> We think, as the Board found, that no great hardship will result to appellant from a denial of a permit to change the servants' quarters over the garage into an apartment for commercial rental. True he will be deprived of some additional revenue from the property which he purchased in 1945 at $18,000 and from which he is receiving rentals of $145 per month and the personal use of another apartment which rents at $55 per month or a total return of $200 per month. If mere denial of additional revenue should be considered a hardship which would justify variations from the terms of a zoning ordinance, the whole scheme of zonal planning could be wrecked. We do not think deprival of additional revenue under the facts in this case is a hardship within the meaning of the zoning laws.
>
> It is perhaps true, as some of appellant's witnesses testified at the hearing, that no harm would be done in this case by the change contemplated. It may even be a temporary advantage to improve the second floor of this garage and convert it from use as servants' quarters to an efficiency apartment to relieve the present housing shortage. However, the Board, taking the long view, may have considered that to let down the bars and make an exception in this case would lead to like changes in other garages and old carriage houses in this vicinity which would ultimately reduce the open spaces and increase the con-

---

for a variance was granted and for when it was rejected: "An administrative decision granting relief to one having the burden of proof must be supported by findings based upon substantial evidence. Without such support, the decision is arbitrary and cannot

weather judicial review.... On the other hand, the failure to grant administrative relief to one carrying the burden is arbitrary if the record compels a contrary decision in light of substantial evidence therein." *Currans,* 873 S.W.2d at 838 (internal footnote omitted).

gestion. They may have considered that when conditions become normal, desirable tenants would not want to live over garages and carriage houses, often located on unsightly alleys, a fact which could lead to slum-like conditions. Such matters are within their discretion. We cannot say that in the exercise of this discretion, they acted in an arbitrary, capricious, dictatorial or discriminatory manner against appellant or that the Court erred in upholding the decision of the Board.

*Id.*, 309 Ky. at 681–82, 218 S.W.2d at 13.

In light of *Moore* 's conclusion that "deprival of additional revenue" was not a "hardship within the meaning of the zoning laws" in that particular case, *id.*, 309 Ky. at 681, 218 S.W.2d at 13, Appellant argues that the Board erred in granting a variance. We note, however, that *Moore*— which was concerned entirely with the question of "hardship"—predates the enactment of KRS 100.243, which requires consideration of whether "the provisions of the regulation would deprive the applicant of the reasonable use of the land *or* would create an unnecessary hardship on the applicant[.]" KRS 100.243(1)(b) (emphasis added). Thus, it is no longer necessary for an applicant to show that he or she would be subjected to an unnecessary hardship in order for a variance to be granted. Instead, establishing a potential deprivation of his or her "reasonable use of the land" is sufficient. Therefore, *Moore* is distinguishable because the Board herein relied largely upon the "reasonable use" standard in reaching its decision.[10]

◼ Under the circumstances, and given the considerable deference we must afford boards of adjustment in these cases, we find no error in the Board's conclusion

that the Trust's efforts to subdivide and to sell all or part of its property qualified as a "reasonable use" of land and that denial of the variance would deprive the Trust of this use. No evidence was presented reasonably suggesting that the character of the neighborhood would change or that the public health of the area would be affected if the variance were granted. Indeed, it instead appears as if little would change given that the proposed eight-acre lot would retain the same access easement previously relied upon and that both proposed lots would otherwise comply with all zoning regulations. It was also shown that both lots were consistent with the size and use of the surrounding properties.

In reaching this decision, we further note that Appellant's brief devotes a considerable amount of attention to the fact that the topography of the subject property had not changed in the years since the Trust purchased it. Appellant argues that to allow the variance in this case "circumvents the zoning regulations by definition" since the topography of the land had remained the same and the applicant had used the land continuously since 1989 without any issues. Instead, the only "change" was the Trust's desire to sell a portion of the property. While this is true, we fail to see how it compels a different result in this case. The fact that a party previously used property in a certain manner but then chooses to seek a variance that would allow the property to be used in a different manner does not merit automatic dismissal of an application for a variance. As long as the proposed use of the land is reasonable and the other requirements for a variance are met, a board of adjustment is free to grant a variance as it sees fit.

---

10. With this said, we note that *Moore* retains some application in this case in that it reinforces that variance decisions are left generously to the discretion of boards of adjustment. *Moore*, 309 Ky. at 680, 218 S.W.2d at 12.

Moreover, most (if not all) requests for zoning variances effectively constitute efforts to circumvent zoning regulations. Otherwise, a variance would not be needed in the first place. The question, though, is whether the granting of a variance would allow for "an *unreasonable* circumvention of the requirements of the zoning regulations." KRS 100.243(1) (emphasis added). Thus, the mere fact that a variance would circumvent a zoning regulation is not enough to merit its denial. The Board obviously concluded in this case that the requested variance would not allow for an unreasonable departure from the applicable zoning ordinance, and we find no reason to disagree with this conclusion. The Trust sought to divide and to sell property for a profit after the Larimores had lived on it for a number of years and sought a variance that would allow it to do so. In light of the evidence presented to the Board, we fail to see how this effort was unreasonable. We further note that the record reflects that the Board gave Appellant's concern ample consideration in its deliberations [11] but simply relied upon other evidence in deciding to grant the application for a variance. No reversible error occurred in this regard.

## Conclusion

For the foregoing reasons, the decision of the Oldham Circuit Court is affirmed.

ALL CONCUR.

11. KRS 100.243(1)(c) requires consideration of whether "[t]he circumstances [leading to the application for a variance] are the result of actions of the applicant taken subsequent to the adoption of the zoning regulation from which relief is sought."