## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### JERRY MARTIN SIZEMORE V. COMMONWEALTH OF VIRGINIA

April 21, 1978.

Record No. 771007.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Thomas G. Hodges (Campbell, Young and Hodges*, on brief) for plaintiff in error.

*Jerry P. Slonaker, Assistant Attorney General (Anthony F. Troy, Attorney General* on brief) for defendant in error.

HARRISON, J., delivered the opinion of the Court.

Jerry Martin Sizemore was convicted by the court below of attempting to murder a Virginia State Trooper and was sentenced to serve four years in the state penitentiary. This appeal questions the sufficiency of the evidence to convict.

On September 19, 1976, the defendant was involved in an automobile accident in Smyth County, left the scene and later abandoned his car. Trooper B. J. Atwood determined that the abandoned car belonged to Sizemore. The trooper knew that Sizemore lived with his parents, and he proceeded to their home to interrogate defendant. When he knocked at the door of the Sizemore home the defendant responded and admitted the trooper. Atwood then interviewed defendant in the presence of Lloyd Spencer, a friend of Sizemore's.

Atwood testified that Sizemore denied any involvement in the accident and claimed that his car had that day been stolen and that his sister, Pamela, was supposed to have reported the theft. The officer asked to speak to the sister, and Sizemore called her. When the young girl came into the room Atwood inquired if he could talk to her on the outside. Atwood testified that during their conversation in his police car the girl told him her brother's car had not been stolen. The officer said that after they had been talking for about five or ten minutes, he heard someone say in a loud tone of voice, "Pam, get out of that car." He stated that when he looked in the direction from which the voice came he saw Sizemore standing in front of the house, approximately 20-25 feet from the police car, with a .22 caliber automatic rifle to his left shoulder, pointed straight at him. The trooper's version of what then occurred is as follows:

> "And he said, 'I'm going to kill you, m- - - - - -f- - - - -', and Pam started hollering, 'No, Jerry, no, Jerry, no', and he hollered at her again and said, 'Get out of that car', and she jumped out the door and started running. She run [*sic*] toward

Mrs. Combs' house, which is back behind her house and to the right. He said, 'Goddamn you, I'm going to kill you'. I said, 'Put your gun down'. He said, 'No, I'm going to kill you'. He started off the porch and he said, 'You move and I'm going to kill you'. I had my right hand laying on the steering wheel and I had my left hand up on the door post. He said, 'If you move, I'll kill you'. He said, 'You put your hands up', and I just raised them up like this. Then he walked on up to about five feet of the car and I said, 'Put your gun down and let's talk', and he said, 'No, I'm going to kill you'. I said, 'If you kill me, you go to the electric chair', and about this time, Lloyd Spencer, the other person who was in the house, came out and he told him — I believe he called him 'Buttons'. He said, 'Go around and get his gun'. He said, 'No, I'm not going to get his gun', he said, 'I'm not going to get involved in it. I'm not going to spend the rest of my life in the penitentiary'. I told him again, I said, 'Put your gun down. When you shoot me, you don't go to the penitentiary. You go to the electric chair'. He said, 'I'm going to kill you', and he told Spencer again, he said, 'I told you to get his gun', and he said, 'No, I'm not going to get his gun.' He said, 'You'd better give me the gun'. I told him, 'You had better give him the gun because when you pull that trigger and kill me, that's cold-blooded murder', and I said, 'You'll fry in the electric chair for it'. He said, 'I'm going to kill you', and I told him again, I said, 'You'd better put your gun down or give it to your friend there, because', I said, 'Right now you're just involved in an automobile accident charges' [sic]. That was the only thing I was investigating, but I said, 'You're getting yourself into some serious trouble', I said, 'When you pull that trigger and you kill me, you'll go to the electric chair', and I told him this two or three different times, and finally he waivered [sic] and he just dropped the gun down and I said, 'Give it to your friend', and he handed the gun . . . before he handed it to him, when he dropped it down, he reached over and pushed the safety back on it and handed it to him, and when he handed it, Spencer took it and ejected the shells out on the ground. At that time, I told Sizemore, without even getting out of the car, I said, 'Come around and have a seat', and he came around and sat down beside me. I questioned him at that time about the accident and arrested him and transported him to the Smyth County Jail."

Atwood was the only witness called by the Commonwealth. Sizemore testified in his own behalf, but remembered nothing about the events of the day other than that he had gotten up in the morning and had been drinking beer and whiskey and driving his automobile around.

■ It is well established that an attempt is composed of two elements: the intention to commit the crime, and the doing of some direct act towards its consummation which is more than mere preparation but falls short of execution of the ultimate purpose. *Martin* v. *Commonwealth*, 195 Va. 1107, 81 S.E.2d 574 (1954). In *Glover* v. *Commonwealth*, 86 Va. 382, 385-86, 10 S.E. 420, 421 (1889), we defined "attempt" as follows:

> "An attempt in criminal law is an apparent unfinished crime, and hence is compounded of two elements, viz: (1) The intent to commit a crime; and (2) a direct act done towards its commission, but falling short of the execution of the ultimate design. It need not, therefore, be the last proximate act to the consummation of the crime in contemplation, but is sufficient if it be an act apparently adopted to produce the result intended. It must be something more than mere preparation. [Citations omitted.] "

The defendant contends that his acts were preparatory only, and that the ineffectual act that would commence the consummation of the crime would be that of shooting rather than pointing the gun. Counsel for Sizemore argues that for a defendant to be guilty of attempted murder, he must either be pulling the trigger and be thwarted by an outside force, or have actually pulled the trigger in an attempt to kill someone. He relies upon *Howard* v. *Commonwealth*, 207 Va. 222, 148 S.E.2d 800 (1966), and *Mullins* v. *Commonwealth*, 174 Va. 477, 5 S.E.2d 491 (1939).

In *Howard* an officer investigating an accident was seized by Howard and his confederate and forced to accompany them in a police car. Howard told his confederate that if the officer said anything regarding street names loud enough to be heard on the radio of the car the confederate was to kill the officer. When a street number was mentioned a cocked gun was thrust into the officer's face. The officer instinctively threw up his hands and struck the gun which then "went off". In affirming the conviction for attempted murder, the Court said:

"The firing of the weapon constituted an overt act which was the commencement of the consummation of the crime of murder. The trial court had a right to conclude that Lamm's act of pushing the pistol aside was an extraneous circumstance independent of the will of defendants which prevented them from carrying out their intent to commit murder. Defendants' threats and conduct, when considered in the light of the attending circumstances, were sufficient to show that the criminal purpose had been formed in their minds." 207 Va. at 228-29, 148 S.E. 2d at 804.

In *Mullins,* a prosecution for the attempted rape of a seven-year-old child, the accused enticed the child into the woods, suggested that they have sexual intercourse and snatched a button from her snowsuit. Upon the child's saying "leave me alone", the accused desisted. We reversed the conviction, saying:

"The evidence was, we think, insufficient to convict the accused of an attempted rape. While it showed the desire on the part of the assailant to commit the crime, there was no overt act which demonstrated a present intention to accomplish it. Certainly there was no overt act which reached 'far enough towards the accomplishment of the desired result to amount to the commencement of the consummation.'

"Notwithstanding the fact that this little girl was entirely within his power, no extraneous circumstances frustrated the consummation of the crime. His improper advances were terminated upon her mere request." 174 Va. at 479, 5 S.E.2d at 492.

Sizemore argues that he too voluntarily terminated his actions at the trooper's request, and that he was not frustrated in the consummation of the crime by any extraneous circumstance.

It is the Commonwealth's position that Sizemore resolved to murder Trooper Atwood and proceeded so far in carrying out this criminal enterprise that his acts amounted to an indictable attempt, and that it did not cease to be such even if defendant did, in fact, subsequently abandon his evil purpose. The Attorney General cites *Lee* v. *Commonwealth,* 144 Va. 594, 600, 131 S.E. 212, 214 (1926), and *Martin* v. *Commonwealth,* 195 Va. 1107, 1112, 81 S.E.2d 574, 577 (1954), where we quoted with approval the following statement from *Stokes* v. *State,* 92 Miss. 415, 46 So. 627 (1908):

" 'Whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt, and this court will not destroy the practical and common sense administration of the law with subtleties as to what constitutes preparation, and what an act done toward the commission of a crime. Too many subtle distinctions have been drawn along these lines for practical purposes. Too many loopholes have been made whereby parties are enabled to escape punishment for that which is known to be criminal in its worst sense.' "

■ This Court has recognized in numerous cases the fact that the question of what constitutes an attempt is often intricate and difficult to determine, and that no general rule can be laid down which will serve as a test in all cases. Each case must be determined on its own facts. *See Howard* v. *Commonwealth*, 207 Va. 222, 228, 148 S.E.2d 800, 804 (1966), quoting from 21 Am. Jur.2d *Criminal Law* § 110 (1965); and *Granberry* v. *Commonwealth*, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946).

It does appear that on the day of the alleged offense Sizemore had been drinking heavily and that he did receive a head injury in the automobile accident. However, the trooper testified that while Sizemore had the odor of alcohol about his person, he answered all questions clearly and intelligently, and that the defendant did not appear to be drunk when he came out of the house. The trooper said, at that time Sizemore "never staggered; he walked steadily; the gun he was holding on me never wavered any appreciable amount, and he appeared to be very much in control of himself".

The testimony is clear and uncontradicted. Sizemore voluntarily armed himself with a loaded rifle, pointed it at the trooper and approached to within five feet of his intended victim, threatening repeatedly to kill him. Significantly, there was no unpleasantness when the parties were in the house. It was obviously the trooper's request for a private conversation with Sizemore's sister that provoked the defendant and triggered his actions. It is reasonable to believe that defendant anticipated that his sister would tell the trooper the truth, that is, that Sizemore's vehicle had not been stolen, and that it was Sizemore who was driving the car at the time it wrecked.

Fortunately, something caused the defendant to abandon his

criminal enterprise. It is not known whether this was due to a qualm of conscience; the possibility that if he shot, the bullet might strike his sister; the refusal of his friend to disarm the trooper; the statements made by the trooper that he would be tried for murder and possibly electrocuted; or the defendant's belief that if he shot, the trooper might be able to return his fire. In any event, the defendant did not shoot, and ultimately relinquished the gun to his friend after first activating the safety thereon. He did not perform the "last proximate act" necessary to commit the crime of murder. Our opinion in *Merritt* v. *Commonwealth*, 164 Va. 653, 657-58, 180 S.E. 395, 397 (1935), contains the following pertinent language:

"Even if the jury had believed that the accused pointed a loaded gun at Trull, they would not have been justified in finding him guilty of an attempted murder, unless they believed that at the time he pointed the pistol he had formed the purpose, the intent, to murder, and the act was done in furtherance of that specific intent."

*See also Epps* v. *Commonwealth*, 216 Va. 150, 216 S.E.2d 64 (1975).

The trial judge was justified in finding that Sizemore formed the purpose and the intent to murder Atwood after the trooper and the girl had left the house and had gone to the automobile for their private conversation. The motive was to frustrate the officer in his investigation of the hit-and-run charge and thereby prevent the arrest of defendant. The procuring of a loaded gun, the act of aiming it, the threats to kill, and the act of advancing on the intended victim were all acts which the trial court could have found were done in furtherance of the intent previously formed by the defendant to murder Atwood. Had Sizemore pulled the trigger when he was only five feet from the trooper, that act most likely would have been the last proximate act of murder. The doing of that last act was not necessary to constitute the crime of attempted murder.

It can be said here, as it was in *Hargrave* v. *Commonwealth*, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974), that:

"The facts and circumstances here, i.e., the use of a deadly weapon coupled with the defendant's other conduct and

utterances, were sufficient for the trial court to find that defendant had the requisite intent to commit murder."

Accordingly, the judgment of the trial court is

*Affirmed.*