# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Alan Arthur Littlefield

September 21, 2001

Case No. (Criminal) 99-417

BY JUDGE WILLIAM W. SWEENEY

The instant criminal matter arose from Alan Arthur Littlefield's actions on and before September 10, 1999, purportedly in violation of Virginia Code § 18.2-32. Following a two-day trial, the jury found Defendant guilty of attempted murder and fixed a sentence of eight years imprisonment. After dismissing the jurors, this Court took under advisement the Defendant's Motion to Set Aside the Verdict as contrary to law and evidence and Motion to Strike. With the intent element clearly shown, counsel was requested to brief whether the evidence presented was sufficient to sustain attempted murder's overt action requirement. After due consideration of applicable law and arguments presented at trial and in memoranda, this Court denies the motions. The Court's reasoning follows in this letter opinion.

## Statement of Facts

Factual conflicts in the evidence have been resolved by the jury's decision. Following an eighteen year marriage which resulted in two children, Alan Arthur Littlefield ("Defendant") and Sherri Littlefield ("Ex-wife") embroiled themselves in a highly-contested divorce and property division in the Circuit Court for the County of Albemarle. While the distribution terms

settled, Ex-wife remained in the marital residence and Defendant moved to Florida, a location closer to his family.

The Commonwealth's evidence demonstrated that Defendant began to express his displeasure at the divorce distribution, especially as it affected his retirement benefits, eventually resulting in his dismissal of two divorce attorneys. Because of the court's rulings, Defendant told his parents, Norman and Marsha Littlefield, and his cousin, Keith Maxwell, of his growing disdain for his ex-wife, her lawyer, and the presiding circuit judge. Defendant made frequent references to their lack of entitlement to the air they breathed and his desire that they die from cancer. Defendant also expressed self-inflicted morbid ideation, talking of suicide to his family and friends and generally appearing to be under acute stress.

Defendant's *pro se* status allowed him direct contact with Ex-wife's attorney, John K. Taggart, III. In telephone conversations, Defendant warned Taggart that his retirement account, derived from work as a waste water expert, was not to be shared with his Ex-wife. Upon receipt of documents indicating that the Court had seized his pension, Defendant's family testified that he became enraged but refused professional intervention. Defendant telephoned Taggart reminding him that because his caution went unheeded, serious consequences would result. In response, Taggart mentioned this threat to a bailiff but took no further action to notify the authorities.

Several days after the seizure notification and on the same day as his new romantic relationship terminated, Defendant handed an undated letter, penned to his former paramour[1] and drove away in his truck. This letter read in pertinent part:

> Terrie I'm eat up with Rage!!! this is not your fault, I have been de-faced of the man I was when we met — and that is why I must do what I'm going to do.
>
> I'm on my way to Virginia this is a one way trip, I will not be back.
>
> They must pay for what they have done to me, you, and my son, what they have done to what could have been our future, our home, and lives.
>
> I cannot forgive or forget, or rather keep on this way. . . .

---

[1] The Defendant presented evidence at trial which indicated that he and his former lover had plans to survey land in Montana in contemplation of purchase.

On that same day, September 9, 1999, Defendant gave two sealed letters to his cousin Keith Maxwell, indicating that they were, "not to be opened until you see me on CNN[2]" and then departed their shared residence. Maxwell thereafter turned these letters over to Defendant's parents. Their contents were revealed as two handwritten correspondences, each dated September 6, 1999. The letter addressed to Defendant's son, Mark Littlefield, read in pertinent part:

> All I ever[] wanted was to be able to give you what I could, your mother took that from you and me, but, Son, I cannot let her enjoy what you and me built in Virginia. . . .

The second letter addressed to Defendant's parents and sister read:

> You know I had to do what I've done! . . . .
> I tried to do right, even when it felt wrong, I stood beside my wife and children best I could, now she has shamed me, and took what was rightfully mine — I can't get it back but I can stop her from enjoying it.
> This is the only way Mark will have a chance now, please make him understand, I cannot live with the shame this woman has put on me and her lawyer they have to go — I tried to let Justice work and now you see what I get, Mark can get ½ of everything so help him and use what ever you need to do it, and raise him for me (please) Mark needs someone for guidance and my mind is so screwed up now I can't be of much help to him. I have lived a good life, just this last 1½ years has taken its toll on me, I'm beat, tired, and shamed, so now I have to stand up and do what's got to be done.

Upon revealing the letters' contents, Defendant's parents, fearing not only for the safety of their son but of the intended victims, contacted the authorities in Virginia. As a former law enforcement agent, Defendant's father was able to rely sufficient information to enable the City of Charlottesville police to take swift action. The department contacted Ex-wife, Taggart, and the presiding judge, indicating the potential danger to their persons and recommending they not go to their usual place of business the following

---

[2] CNN is an acronym for Cable News Network, a nationally-broadcast news channel. The Commonwealth asserted on several occasions that suicides, as opposed to homicides and suicide-homicides, are not typically reported on CNN.

morning. The advice was heeded. While none went to work on September 10, 1999, the local police enlarged their usual duties to include keeping an eye out for Defendant.

Anne Breeden, a social acquaintance of the estranged couple and co-worker of Ex-wife, first spotted the Defendant. Breeden observed the Defendant in the parking lot of the Albemarle County Office Building at eight o'clock a.m., when and where she and Ex-wife usually reported to their shared employer. Defendant greeted Breeden, inquiring how she had been of recent. Breeden's brief encounter with the Defendant who was riding a bicycle caused her to diverge from her usual trek into work to report her sighting of Defendant to the Albemarle County Police Department, stationed in the neighboring building. There was no evidence as to whether Defendant had a weapon at this time. Breeden testified that she saw no visible weaponry on Defendant.

With Defendant having been seen in the area, the suspicions of local police and Defendant's parents were confirmed and a search ensued. Within minutes, City of Charlottesville authorities apprehended Defendant approximately five blocks away, outside the Circuit Court for the County of Albemarle. Defendant was seated inside of his pick-up truck with the bicycle in the bed of the truck. Appearing calm and collected, the Defendant was taken into custody.

The search of the truck revealed two revolvers, a .357 magnum and .44 magnum. Neither firearm was loaded but their bullets were readily loadable and unloadable from within the cab. One gun's location was particularly noted. As opposed to its usual placement beneath the driver's seat, it was found stuck between the driver's seat and the console.

During the trial and over objection, the Commonwealth presented evidence of a past crime committed by the Defendant. Approximately two years prior to the incident at hand, Defendant threatened Ex-wife in the former marital residence with a gun. Defendant purportedly placed a gun to the head of his Ex-wife, in addition to his own head, and threatening to discharge the gun. Defendant presented undisputed evidence that he, Ex-wife, and their two children reconciled shortly thereafter. The Defendant elected not to testify.

*Analysis*

In the foremost opinion on Virginia attempt crimes, the Supreme Court stated, "It is well established that an attempt is composed of two elements: the intention to commit the crime, and the doing of some direct act towards its consummation which is more than mere preparation but falls short of the

execution of the ultimate purpose." *Sizemore v. Commonwealth*, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978) (citing, *Martin v. Commonwealth*, 195 Va. 1107, 81 S.E.2d 574 (1954)). *Martin* itself elaborated:

> It is well settled in this jurisdiction that in criminal law an attempt is an unfinished crime, and is compounded of two elements, the intent to commit the crime and the doing of some direct act towards its consummation, but falling short of the execution of the ultimate design; that it not be the last proximate act towards the consummation of the crime in contemplation, but is sufficient if it be an act apparently adopted to produce the result intended; mere preparation is not sufficient.

*Id.* at 1110-11 (citing *Uhl v. Commonwealth*, 47 Va. (6 Gratt.) 706 (1849); *Hicks v. Commonwealth*, 86 Va. 223, 226, 9 S.E. 1024 (1889); *Glover v. Commonwealth*, 86 Va. 382, 386, 10 S.E. 420 (1889); *Collins v. Radford*, 134 Va. 518, 535, 113 S.E. 735 (1922); *Thacker v. Commonwealth*, 134 Va. 767, 769, 114 S.E. 504 (1922); *Dixon v. Commonwealth*, 162 Va. 798, 803, 173 S.E. 521 (1934); *Merritt v. Commonwealth*, 164 Va. 653, 657, 180 S.E. 395 (1935); *Granberry v. Commonwealth*, 184 Va. 674, 678, 36 S.E.2d 547 (1946); *Preddy v. Commonwealth*, 184 Va. 765, 775, 36 S.E.2d 549 (1946); *Anderson v. Commonwealth*, 195 Va. 258, 261, 77 S.E.2d 846 (1953)).

Impossibility is not a defense to an attempt crime: "If the defendant intends to violate the law and, but for some impediment, would complete the unlawful act, then he is guilty of the attempted crime." *Bloom v. Commonwealth*, 34 Va. App. 364, 372, 524 S.E.2d 18, 21 (2001) (citing *Parham v. Commonwealth*, 2 Va. App. 633, 636, 347 S.E.2d 172, 173-74 (1986)). In rendering their verdict, the jury is entitled to view the evidence "collectively" drawing all reasonable and justified inferences. *See, Tharrington v. Commonwealth*, 2 Va. App. 491, 496, 346 S.E.2d 337, 340 (1986).

Virginia, unlike some states, has adopted the "slight acts" test in attempt crimes:

> "[W]henever the design of a person to commit crime is clearly shown, slight acts in furtherance of this design will constitute an attempt, and this court will not destroy the practical and common sense administration of the law with subtleties as to what constitutes preparation and what an act done toward the commission of a crime. Too many subtle distinctions have been drawn along these lines for

practical purposes. Too many loopholes have been made whereby parties are enabled to escape punishment for that which is known to be criminal in the worst sense."

*Sizemore v. Commonwealth*, 218 Va. 980 at 985, 243 S.E.2d 212 at 215 (1978), quoting *Stokes v. State*, 92 Miss. 415, 428, 46 So. 627, 629 (1908) (approved by Virginia in *Martin v. Commonwealth*, 195 Va. 1107, 1113, 81 S.E.2d 574, 577 (1954); *Lee v. Commonwealth*, 144 Va. 594, 600, 131 S.E. 212, 214 (1926)).

The question presented therefore evolves into whether Defendant made a "direct act towards consummation [of the murder of Ex-wife] which is more than mere preparation but falls short of the execution of the ultimate purpose." *Sizemore v. Commonwealth*, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978). In support of her accusation that Defendant committed such requisite actions, the Commonwealth presented evidence tending to show an overt movement toward the commission of a crime. First, Defendant drove directly from the Sarasota/Bradenton area of Florida to Charlottesville, a fourteen to fifteen hour non-stop trip of about 900 miles, without any appreciable or asserted business in Virginia. Second, the Defendant was apprehended inside of his truck with two deadly weapons and bullets within easy grasp, one firearm, which was found removed from its usual position to a more-accessible location. Third, Defendant's presence at the location where and when his Ex-wife would be found but for the intervention of local police at the time in the morning when she went to work. Fourth, parking his truck and arriving at her place of work on a bicycle to avoid license plate detection.

In contemplating whether these four actions amount to a direct action towards the consummation of attempted murder, the Court is aware that, "[t]he question of what constitutes an attempt is often intricate and difficult to determine, and no general rule can be laid down which will serve as a test in all cases. Each case must be determined on its own facts." *Sizemore v. Commonwealth*, 218 Va. at 885; *Howard v. Commonwealth*, 207 Va. 222, 228, 148 S.E.2d 800, 804 (1966) (quoting, 21 Am. Jur. 2d, *Criminal Law*, § 110 (1965)); *Granberry v. Commonwealth*, 184 Va. 674, 678, 36 S.E. 2d 547, 548 (1946).

Nonetheless, an examination of the overt act requirement in attempted murder cases assists such an inquiry. Cases from other states lend non-binding guidance.[3] *See What Constitutes Attempted Murder* 54 A.L.R. 3d 612 (2001).

---

[3] Defendant relied on *Dupuy v. State*, 325 S.W.2d 328 (1959), in briefs. My research indicates that the ruling in the *Dupuy* case was superceded by statute and

Two opinions from states which also apply the slight act standard, *supra*, are particularly similar to the facts at hand. The California Court of Appeals affirmed the sufficiency of the evidence that the defendant said he was going to kill the victim and then crouched outside her residence with a loaded gun to satisfy the overt movement requirement. *People v. Morales*, 5 Cal. App. 4th 917, 7 Cal. Rptr. 2d 358 (1992). The Supreme Court of Delaware held that the Defendant took a substantial step towards murdering his wife when he told his psychiatrist that he was going to kill her, cancelled an appointment with the psychiatrist stating that he was leaving Indianapolis immediately for Delaware to do the deed, left with loaded guns, made threatening phone calls to his wife, and was arrested between his wife's home and work while he was seeking directions to her house from the officer. *Bright v. State*, 740 A.2d 927 (1999).

Guidance by analogy is also gained within the confines of the Commonwealth's borders in two recent attempt cases from the Court of Appeals. First, in the case of *Bloom v. Commonwealth*, 34 Va. App. 364, 542 S.E.2d 18 (2001), the adult male defendant lured, via the internet, a thirteen year old girl to meet him at a pay phone. Pursuing a plan to sodomize her, the defendant drove to the location, waited briefly, and then drove away only to be stopped shortly thereafter by the police who had impersonated the girl over the internet. The Court ruled that his statement of intent coupled with the action of driving to the designated location, "went beyond preparation and constituted an attempt." *Id.* at 372. Second, in *Parsons v. Commonwealth*, 32 Va. App. 576, 529 S.E.2d 810 (2000), the Court of Appeals affirmed the guilt of a defendant, who, as a convicted felon, attempted to possess a firearm. There, the defendant went to a gun shop, chose a gun for purchase, and completed the state-mandated paperwork, but neither paid for nor procured the gun. The Court found the evidence sufficient to convict because, "[s]ubmitting the required form is a direct act done toward the completion of a felony . . . [which] move[s] beyond arranging the means to purchase the gun and effectively invoke[s] action on the part of the vendor, thereby commencing the consummation of the intended unlawful act." *Id.* at 583.

## Conclusion

The jury was entitled to draw reasonable inferences from proven facts. Further, circumstantial evidence alone would be sufficient to convict if the elements are proven by the criminal standard. The sealed letters written by the

---

criticized by the later Tennessee Supreme Court. *See, State v. Reeves*, 916 S.W.2d 909, 910-12 (1996).

defendant and his statement that they were, "not to be opened until you see me on CNN" clearly show an intent to kill the wife and not just commit suicide. There was no other reason for Defendant to drive 900 miles from Florida to Virginia with weapons, ammunition, and a decoy bicycle and show up at his Ex-wife's place of work at the time she went to work other than to kill her and perhaps himself. In his own words, "I'm on my way to Virginia this is a one way trip, I will not be back." Whether a jury could infer that Defendant probably had a weapon when he arrived at the workplace, I do not know. However, subsequent events point to this conclusion. His acts went beyond "mere preparation" and under Virginia's "slight act" standard, the jury had a right to decide as they did.

For the reasons stated, the Motion to Strike and Motion to Set Aside the Verdict are denied.