COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:     Judges Huff, Athey and Fulton
Argued by videoconference


GREGORY BISHOP

v.       Record No. 0774-21-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE GLEN A. HUFF
APRIL 19, 2022


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

James T. Maloney (James T. Maloney, PC, on brief), for appellant.

Susan Brock Wosk, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted appellant of attempted forcible sodomy and aggravated sexual

battery.  He challenges the sufficiency of the evidence supporting his convictions.  Finding no error

in the trial court's decision, this Court affirms.

## I.  BACKGROUND

On appeal, this Court "consider[s] the evidence and all reasonable inferences flowing

from that evidence in the light most favorable to the Commonwealth, the prevailing party at

trial." *Williams v. Commonwealth*, 49 Va. App. 439, 442 (2007) (*en banc*) (quoting *Jackson v.

Commonwealth*, 267 Va. 666, 672 (2004)).  Viewed through this lens, the evidence is as follows:

In September 2020, appellant was married to Jennifer Bishop ("Jennifer"), and they had an

adult daughter, S.B., who lived on her own.  On September 2, 2020, S.B. arrived at her parents'

home between 7:00 and 8:30 p.m.  When she arrived, she and her parents watched television

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

together in the living room. Appellant, who had to work the next day, fell asleep on the couch, but S.B. and Jennifer stayed up several hours talking and watching television. Over the course of the evening, Jennifer prepared and consumed two or three mixed drinks for herself; she stated that each drink contained one shot of vodka mixed with roughly seventeen ounces of water in a water bottle. Although Jennifer did not see S.B. drinking, she agreed that S.B. could have been, but she noted that S.B. appeared "coherent."

Jennifer testified that, per his usual practice, appellant awoke at 4:00 a.m., and at 4:30 a.m., Jennifer retired to her bedroom. When she left, appellant and S.B. were awake, and S.B. was sitting in a recliner dressed in a t-shirt and pajama pants; S.B. conversed with her mother and "seemed perfectly fine." Jennifer took "a Xanax" and laid in bed listening to Spotify to help her sleep, but after thirty to forty minutes, she turned it off. When she did, she heard her daughter "making [a] moaning noise." Jennifer looked in the living room and saw S.B. "thrashing around" in the recliner, "moaning and hollering."

Initially, Jennifer did not investigate further because she knew appellant was in the living room. But after a few minutes, S.B. continued to make "moaning" noises, prompting Jennifer to get out of bed. When Jennifer entered the living room, S.B. was no longer in the recliner. Instead, she was lying on the couch in her thong underwear with her pants off and her legs spread open. Still "moaning and screaming," S.B. appeared to be "out of it." Appellant's face was between S.B.'s legs, and he appeared to be performing oral sex on her.[1] When he made eye contact with his wife, he said nothing. From there, Jennifer retrieved her phone, ran out of the house, and called the police.

---

[1] At trial, Jennifer was asked if "performing oral sex" meant that she saw appellant's "face or mouth on [S.B.'s] vagina." She answered, "One hundred percent." On cross-examination, she clarified further, stating, "I don't believe there was penetration."

When the police arrived, Jennifer entered the house with them. She saw her daughter's pants across the room and noticed her thong underwear was "twisted" and "over to the side." Officer Sykes testified that S.B. was "extremely inebriated" and unresponsive. Sykes "tapp[ed] [S.B.'s] shoulder" and tried to wake her for two or three minutes, but when he could not, he asked Jennifer for help. When Jennifer joined Sykes, S.B. simply "made noises" before her eyes rolled back in her head. Officer Dobson stated that when they tried to wake S.B., she could not respond and merely shook her head. According to Dobson, S.B. remained in this state for nearly two hours. When she finally spoke, she was "confused" and began talking about her car at her boyfriend's house. Before the officers could collect her underwear, S.B. urinated on herself.

Sykes testified that Jennifer was "crying" and "very upset" when the police arrived at the house. Although he could smell alcohol on her, she did not appear to be intoxicated. Jennifer told Sykes that "she was in her room with her headphones on [for] . . . about 30 minutes, and she took her headphones off, and she heard [S.B.] making a screaming sound." She stated that she left her bedroom and entered the living room, and "as soon as she walked in the room, she saw that [appellant]'s head was between her daughter's legs, and he woke up and looked at her, and she stated to [Sykes] that it was, oh, I've just been cautious [sic]." Jennifer told Sykes that appellant's "face was down in his daughter's vaginal area" and S.B.'s "legs were both spread wide apart and her pajama pants were not on . . . anymore versus that they were on her before." Jennifer admitted she "could not see" whether there was penetration or "exactly" what appellant was doing, but she "did not believe" there was penetration.

Sykes noted that appellant appeared "intoxicated" and "lost." He recorded his interaction with appellant, who was visibly "sweating." Dobson concurred, recalling that appellant was "profusely sweating," shaking, and so pale that Dobson asked him to sit down to avoid fainting.

When the officers informed appellant of Jennifer's observations, he immediately became "really fidgety."

S.B.'s panties were submitted for DNA analysis, but no seminal fluid, blood, or male DNA material were recovered. Forensic scientist Caitlyn Ayoub agreed that, if the victim had urinated on the underwear, Ayoub could only obtain female DNA material from it.

S.B. recalled only a few details of the evening. She testified that around 7:00 or 8:00 p.m., she and her mother drank two mixed drinks in water bottles, with each of them mixing their respective beverages; S.B. said she added a single shot of vodka to her drinks. S.B. stated that after her mother went to bed, she and appellant talked, and she fell asleep briefly. Her next recollection was drinking shots of vodka with appellant as they watched television and played a game. S.B. testified that they each drank "[t]hree or four shots that [she could] remember." She admitted that she became "intoxicated" and moved from the recliner to the sofa while still wearing her pajamas. Her next memory was being awakened by the police, but she had no recollection of speaking with them. Although Sykes said S.B. told him that night appellant had not "do[ne] anything sexual" to her, S.B. testified that she could not recall the police questioning her about any "inappropriate touching" by appellant.

At the conclusion of the evidence, appellant argued the Commonwealth failed to prove attempted forcible sodomy because it did not establish that he intended to commit a sex act. Regarding the aggravated sexual battery charge, he asserted that the evidence did not prove "he [was] trying to arouse the victim sexually, to gratify himself or her sexually." Further, appellant stressed that Jennifer's testimony was not credible.

The trial court accepted Jennifer's testimony and found there was undisputed evidence showing appellant was on the sofa with his daughter with "his head . . . between her legs in the vaginal area" while her legs were "spread, her pants off, and her underwear skewed." Based on

- 4 -

these circumstances, it determined that "it stretched credulity to conclude any other intent than an act to commit sodomy" or "to conclude that this was not a direct overt act taken toward th[e] commission" of sodomy. Regarding the aggravated sexual battery charge, the trial court found S.B. was mentally and physically helpless and that appellant sexually molested her by intentionally touching her "intimate parts or material directly covering such intimate parts." Accordingly, the trial court convicted appellant of attempted forcible sodomy and aggravated sexual battery.

This appeal followed.

## II. STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

## III. ANALYSIS

Appellant contends the evidence was insufficient to support his convictions because Jennifer's testimony was inherently incredible. He stresses that when Jennifer observed him and S.B. in the living room, she had had little sleep and had consumed a combination of alcohol and

Xanax, "cast[ing] serious doubt on her ability to observe and accurately report" her observations. Further, appellant notes that Jennifer's testimony conflicted with S.B.'s testimony regarding the time of S.B.'s arrival because Jennifer testified that S.B. had been away for several days before September 2, 2020, whereas S.B. said she had been at home "all day" on September 1, 2020. He also asserts that Jennifer testified that S.B. did not drink any alcoholic beverages with Jennifer, conflicting with S.B.'s testimony that she was drinking vodka waters with her mother. Appellant maintains that Jennifer gave conflicting descriptions regarding the manner and degree of his touching. He notes that Jennifer told the police she could not see whether appellant penetrated S.B.'s vagina and never told them she saw his mouth "on" S.B.'s vagina; instead, she stated only that she saw his head in that area. Appellant says Jennifer's testimony was uncorroborated and that S.B. denied appellant had sexually abused her. He asserts that, if he had intended to sodomize S.B., "there is no evidence of anything stopping [him]." Finally, he contends the evidence failed to prove aggravated sexual battery because, even assuming he touched S.B.'s vagina, "no evidence" established that he did so with the intent to sexually gratify himself or S.B. This Court finds appellant's argument to be without merit.

"Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]his [C]ourt will not seek to pass upon the credibility of the witnesses where their [testimony] is not inherently incredible." *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018) (quoting *Rogers v. Commonwealth*, 183 Va. 190, 201-02 (1944)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* at 487 (quoting *Juniper*

*v. Commonwealth*, 271 Va. 362, 415 (2006)).  Moreover, the fact finder "[i]s free to believe or disbelieve, in part or in whole, the testimony of any witness."  *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (*en banc*).

An "attempt" is composed of (1) the intention to commit the crime and (2) the doing of some direct act towards its consummation that is "more than mere preparation but falls short of execution of the ultimate purpose."  *Gray v. Commonwealth*, 260 Va. 675, 681 (2000).  What constitutes an attempt "is often intricate and difficult to determine."  *Sizemore v. Commonwealth*, 218 Va. 980, 985 (1978).  As a result, "no general rule can be laid down which will serve as a test in all cases.  Each case must be determined on its own facts."  *Id.*

"Determining intent is 'generally a question for the trier of fact.'"  *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Haywood v. Commonwealth*, 20 Va. App. 562, 565 (1995)).  In determining whether a defendant is guilty of an attempted crime, "the fact finder is . . . allowed broad latitude in determining the specific intent of the actor."  *Fortune v. Commonwealth*, 14 Va. App. 225, 229 (1992), *quoted with approval in Siquina v. Commonwealth*, 28 Va. App. 694, 700 (1998).  "[I]f 'the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt.'"  *Tharrington v. Commonwealth*, 2 Va. App. 491, 494 (1986) (quoting *State v. Bell*, 316 S.E.2d 611, 616 (N.C. 1984)); *see also Jones v. Commonwealth*, 70 Va. App. 307, 324 (2019) ("[A]n act constituting an attempt can be 'slight.'").  Further, to the extent that appellant asserts that the evidence failed to prove the requisite intent for aggravated sexual battery,[2] we will not disturb the trial court's

---

[2] Code § 18.2-67.3 states in pertinent part that "[a]n accused is guilty of aggravated sexual battery if he . . . sexually abuses the complaining witness, and . . . [t]he act is accomplished through the use of the complaining witness's mental incapacity or physical helplessness."  "Sexual abuse" is defined in Code § 18.2-67.10 as "an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts . . . ."

factual finding unless it is plainly wrong or without evidence to support it. *Fletcher*, 72 Va. App. at 506.

Here, the record does not establish that Jennifer's testimony was inherently incredible. Consistent with her trial testimony, she told the police she could not see whether appellant penetrated S.B.'s vagina; however, she was adamant that appellant's mouth was "on" S.B.'s crotch. Although S.B. initially told the police her father had not touched her sexually, she was so incoherent that she could barely speak, permitting a rational inference that she was unaware of what was happening to her. And notably, appellant does not dispute the trial court's finding that S.B. was mentally and physically incapacitated at the time of the offenses.

Despite appellant's claim that Jennifer's testimony conflicted with S.B.'s regarding the time of S.B.'s arrival and whether they were both drinking, Jennifer expressly testified that she did not know if S.B. was drinking. Further, although appellant believes the combination of little sleep, alcohol, and Xanax rendered Jennifer's observations unreliable, Sykes testified that she did not appear intoxicated when he spoke with her. Contrary to appellant's view, a rational fact finder could conclude Jennifer's behavior was consistent with having seen her husband molest their daughter: Jennifer immediately called the police and fled the house and was "very upset" and "crying" when the officers arrived.

Further, S.B. testified that she was fully dressed when she moved from the chair to the sofa, allowing a rational inference that appellant removed her pants. S.B.'s testimony that she and appellant drank several shots of vodka during the thirty to forty minutes that Jennifer was in bed reasonably supported the conclusion that S.B. consumed enough alcohol within a short period of time to incapacitate her. Finally, Jennifer heard her daughter moaning and screaming as she entered the living room and encountered appellant with his face on S.B.'s crotch. When Jennifer returned with the police, she noticed her daughter's thong underwear was pushed to the

side. Although appellant's DNA material was not recovered from the underwear, a forensic scientist explained that S.B.'s urine interfered with the collection of such evidence.[3]

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Viewed as a whole, the circumstances presented to the trial court were sufficient for a rational fact finder to conclude that appellant's face was touching S.B.'s vaginal area and that he intended to perform oral sex on her. The evidence also reasonably supported a finding that appellant touched S.B. with the intent to sexually gratify himself or S.B., who referred to her boyfriend repeatedly when the police and Jennifer attempted to wake her. Accordingly, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that appellant was guilty of attempted forcible sodomy and aggravated sexual battery.

IV. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

---

[3] In any event, it is well-established that the testimony of a sexual abuse victim need not be corroborated. *Wilson v. Commonwealth,* 46 Va. App. 73, 87-88 (2005); *Garland v. Commonwealth,* 8 Va. App. 189, 191-93 (1989).