UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:    Judges Ortiz, Friedman and White
Argued at Christiansburg, Virginia


MARK WAYNE GUSLER

                                                                    MEMORANDUM OPINION* BY
v.        Record No. 0790-23-3                             JUDGE DANIEL E. ORTIZ
                                                                         JUNE 18, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GILES COUNTY
H. Lee Harrell, Judge

Jessiah Hulle (Mark Q. Anderson; The Law Office of Mark Q.
Anderson, on brief), for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Mark Wayne Gusler of using a sawed-off

shotgun during a crime of violence, misdemeanor assault and battery, and misdemeanor brandishing

a firearm.  Gusler argues on appeal that the trial court abused its discretion by allowing evidence of

a prior threat he had made toward the victim.  He also contends that his convictions of assault and

battery and using a sawed-off shotgun during a crime of violence violated double jeopardy and that

the Commonwealth did not prove that he intended to commit a crime of violence.  We disagree and

affirm.

_____

          * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Gusler's neighbor Michael O'Brien was at home on the evening of March 9, 2022, waiting for Alan Smith—another neighbor—to retrieve a bale of hay. Around 5:00 p.m., O'Brien heard a vehicle horn and believed that Smith had arrived. O'Brien drove his tractor toward the road to meet Smith and saw a small truck that he did not recognize. The truck backed down the driveway straight toward O'Brien's tractor, prompting O'Brien to pull alongside the truck to avoid being hit. When he did so, he saw that Gusler was driving the truck. Gusler had a shotgun on his lap, and his window was down. He and O'Brien were about five feet away from each other.

Gusler told O'Brien "it's your day to die, motherfucker" before raising the shotgun and pointing it at O'Brien's head through the open window. Gusler kept the shotgun pointed at O'Brien's head for 15 to 20 seconds while O'Brien begged Gusler not to kill him.

Smith arrived while Gusler was pointing the gun at O'Brien. Smith's arrival distracted Gusler, prompting him to lower the shotgun and turn away from O'Brien. O'Brien seized on Gusler's split focus, jumped off his tractor, and ran to his truck to retrieve a pistol. Gusler tried to drive away, but O'Brien confronted him with the pistol while directing Smith to call 911. Gusler exited his truck unarmed and approached O'Brien on foot. He initially dropped to his knees and begged O'Brien to kill him but then stood up again and "got up in [O'Brien's] face." O'Brien hit Gusler in the eye with the pistol barrel, knocking him to the ground.

- 2 -

O'Brien removed the shotgun and an AK-47 from Gusler's truck. He unsuccessfully tried to take Gusler's keys, but Gusler managed to get back into his truck and drive away.

The police arrived and found the Remington 870 shotgun and AK-47 in O'Brien's driveway. The shotgun barrel was smooth bore and measured 12 and a half inches.[1] The responding officer did not remember if the shotgun was loaded when he retrieved it. The Commonwealth's firearms expert testified that the barrel appeared to have been cut or sawed.

Gusler told the police that he went to confront O'Brien about negative statements that O'Brien had allegedly made about Gusler. He stated that he always kept the firearms in his truck.

O'Brien testified that he "knew this was coming at some point" because Gusler had threatened him in the past. Gusler objected to the admissibility of the past threat, asserting it was inadmissible evidence of prior bad acts. The trial court overruled the objection, finding that Gusler's prior threat toward O'Brien showed a "common scheme or plan or intent" under Virginia Rule of Evidence 2:404(3)(b). After the court's ruling, O'Brien testified that Gusler had told him at one point in the six months preceding March 9, 2022, "you know I'm going to kill you, you son of a bitch, I'm going to get you."

The Commonwealth argued that Gusler had attempted to murder O'Brien. The trial court did not discuss attempted murder and instead found that the underlying predicate for the sawed-off shotgun offense was assault with the intent to maim, disfigure, or kill. The trial court found Gusler guilty of using a sawed-off shotgun during a crime of violence, assault and battery, and brandishing a firearm, and sentenced him to 25 years and 24 months' imprisonment with 13 years and 18 months suspended.

---

[1] A smooth bore weapon is considered a sawed-off shotgun if, among other elements, it has a barrel with a length of less than 18 inches. Code § 18.2-299.

ANALYSIS

I. The trial court did not err by admitting Gusler's prior threat.

"It is well-settled that '[d]ecisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."'" *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (alteration in original) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"[E]vidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith." Va. R. Evid. 2:404(b). Such "bad acts" evidence may still be admissible "when it '"shows the conduct or attitude of the accused toward his victim" . . . or shows motive, method, intent, plan or scheme, or any other relevant element of the offense at trial.'" *Cheripka v. Commonwealth*, 78 Va. App. 480, 495 (2023) (alteration in original) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008)). The trial court must still determine that the evidence's probative value is not "substantially outweighed by the danger of unfair prejudice." Va. R. Evid. 2:403(a); *Cheripka*, 78 Va. App. at 495 (quoting *Harvey v. Commonwealth*, 76 Va. App. 436, 479 (2023)). "[A]ll probative direct evidence generally has a prejudicial effect to the opposing party"; hence, we are concerned only with "unfair prejudice" that tends "to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Lee v. Spoden*, 290 Va. 235, 251 (2015).

The trial court did not abuse its discretion in admitting O'Brien's testimony about Gusler's prior threat. That threat was probative of Gusler's intent to kill O'Brien. The evidence was therefore relevant and fell under an exception to the general prohibition on prior bad acts evidence.

- 4 -

Va. R. Evid. 2:404(b). Gusler has not shown that the evidence was *unfairly* prejudicial in any way. Rather, the evidence was prejudicial precisely because it was probative of Gusler's bad intent—a disputed element of the case. Accordingly, we affirm the trial court's admission of the evidence.

## II. Gusler's convictions did not violate double jeopardy.

No person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause "guarantees protection against . . . multiple punishments for the same offense." *Commonwealth v. Gregg*, 295 Va. 293, 298 (2018). We review double jeopardy claims de novo. *Id.* at 296. "The Double Jeopardy Clause 'does not apply where the same conduct is used to support convictions for separate and distinct crimes.'" *Sandoval v. Commonwealth*, 64 Va. App. 398, 413 (2015) (quoting *Brown v. Commonwealth*, 37 Va. App. 507, 517 (2002)); *see Gamble v. United States*, 139 S. Ct. 1960, 1965 (2019) (the Double Jeopardy Clause "protects individuals from being twice put in jeopardy 'for the same *offence*,' not for the same *conduct* or *actions*").

In determining whether offenses are separate for purposes of double jeopardy, we apply the test articulated in *Blockburger v. United States*, 284 U.S. 299 (1932). The *Blockburger* test "asks whether each statutory offense requires proof of a fact that the other does not." *Gregg*, 295 Va. at 298. "In applying this test, we 'look at the offenses charged in the abstract, without referring to the particular facts of the case under review.'" *Sandoval*, 64 Va. App. at 413 (quoting *Coleman v. Commonwealth*, 261 Va. 196, 200 (2001)). "This standard requires that we view the elements of the offenses generally and conceptually, rather than the elements of the offenses as charged in a specific instance." *Johnson v. Commonwealth*, 58 Va. App. 303, 323 (2011). Consequently, there is only a double jeopardy violation if both "offenses *always* require proof of the same elements." *Id.* (quoting *Davis v. Commonwealth*, 57 Va. App. 446, 456 (2011)).

In the abstract, Code § 18.2-300 requires proof of "[p]ossession or use of a 'sawed-off' shotgun or 'sawed-off' rifle in the perpetration or attempted perpetration of a crime of violence." Potential predicate crimes of violence include "murder, manslaughter, kidnapping, rape, mayhem, assault with intent to maim, disable, disfigure or kill, robbery, burglary, housebreaking, breaking and entering and larceny." Code § 18.2-299. "The crime of assault and the crime of battery are independent criminal acts, although they are linked in Code § 18.2-57." *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010). Assault and battery are not defined in Code § 18.2-57, and therefore we look to the common law for the definition of these offenses. To prove assault, the Commonwealth must show that the defendant engaged in an overt act that was either (1) "intended to inflict bodily harm with the present ability to inflict such harm" or (2) "'intended to place the victim in fear or apprehension of bodily harm,' which did in fact create 'such reasonable fear or apprehension in the victim.'" *Blankenship v. Commonwealth*, 71 Va. App. 608, 620 (2020) (quoting *Clark v. Commonwealth*, 54 Va. App. 120, 128 (2009)). To prove battery, the Commonwealth must demonstrate "wil[l]ful or unlawful touching" of another. *Parish*, 56 Va. App. at 330 (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)). "It is not necessary that the touching 'result in injury to the [victim's] corporeal person. It is sufficient if it does injury to the [victim's] mind or feelings.'" *Id.* (quoting *Wood*, 149 Va. at 405).

Code § 18.2-300 requires proof of elements not included in common law assault and battery, such as possession of a sawed-off shotgun or rifle. Similarly, assault and battery requires proof of elements not *required* by Code § 18.2-300. For example, a defendant may violate Code § 18.2-300 by possessing a sawed-off shotgun in the commission of larceny, which does not require proof of any of the elements of assault and battery. We must view the offenses in the abstract, so it is irrelevant whether the predicate offense in this specific case was assault with intent to maim,

disable, disfigure, or kill. *See Johnson*, 58 Va. App. at 323. Gusler's convictions do not violate double jeopardy because each offense contains an element the other does not.

### III. Sufficient evidence supported Gusler's conviction for possessing a sawed-off shotgun during a crime of violence.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question . . . is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Washington v. Commonwealth*, 75 Va. App. 606, 615 (2022) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

Gusler does not dispute that he used or possessed a sawed-off shotgun. Instead, he argues that the Commonwealth failed to prove that he intended to commit any of the underlying predicate offenses, specifically assault with intent to maim, disfigure, or kill. "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)). "[C]ircumstantial evidence of intent may include the conduct and *statements* of the alleged offender." *Parish*, 56 Va. App. at 331 (emphasis added). "[W]hether the required intent exists is generally a question of fact." *Brown v. Commonwealth*, 68 Va. App. 746, 787 (2018) (alteration in original) (quoting *Nobles v. Commonwealth*, 218 Va. 548, 551 (1977)).

A conviction under Code § 18.2-300 is lawful even if the defendant only attempts to commit the predicate offense. "An attempt to commit a crime is composed of two elements: (1) The intent

to commit it; and (2) a direct, ineffectual act done towards its commission." *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Haywood v. Commonwealth*, 20 Va. App. 562, 565 (1995)). "The direct but ineffectual act is commonly referred to as an 'overt act.'" *Jones v. Commonwealth*, 70 Va. App. 307, 318 (2019) (en banc) (quoting *Jay v. Commonwealth*, 275 Va. 510, 525 (2008)).

A reasonable fact finder could infer that Gusler had the specific intent to maim, disfigure, or kill O'Brien because Gusler specifically declared that he had that intent when he pointed a shotgun at O'Brien's head and told him that it was his "day to die." That inference is strengthened by O'Brien's testimony that Gusler previously threatened to kill him someday. Gusler's statements are strong evidence of his intent. *See Parish*, 56 Va. App. at 331.

We reject Gusler's argument that his hesitation before Smith interrupted him proves that he never intended to pull the trigger. In *Sizemore v. Commonwealth*, 218 Va. 980 (1978), the Supreme Court affirmed a conviction for attempted murder when the defendant pointed a loaded gun at an officer. Although "something caused the defendant to abandon his criminal enterprise," such as "a qualm of conscience," the Court held that the fact finder could conclude that the defendant had the specific intent to kill when he committed the overt acts of procuring a loaded gun, aiming it at the officer, and threatening to kill him. *Id.* at 985-86. Unlike in *Sizemore*, the Commonwealth did not present direct evidence here that the firearm was loaded. Even so, the fact finder could reasonably infer from Gusler's statements and conduct that Gusler believed that the firearm was loaded.

Finally, Gusler relies on *Small v. Commonwealth*, No. 1511-08-3 (Va. Ct. App. Dec. 15, 2009), in which we held that the Commonwealth failed to exclude the reasonable hypothesis that the defendant intended merely to commit an assault and not a malicious wounding when he approached the victim with a gun in his pocket and told her that her "management style suck[ed]." *Id.*, slip op. at 3. *Small* does not compel a different result. First, in *Small*, "no bullet

was in the chamber, and the evidence established appellant could have pulled the trigger repeatedly without causing the firearm to expel a bullet." *Id.* at 6. In this case, by contrast, there was no evidence either way about whether the shotgun was loaded. Second, unlike in this case, the defendant in *Small* "made no direct threats or statements implying a threat" that the fact finder could use to infer his intent. *Id.* at 7.

After previously threatening to kill O'Brien, Gusler pointed a sawed-off shotgun at his head from five feet away and told him that it was his day to die. Read in the light most favorable to the Commonwealth, that evidence was sufficient to show that Gusler intended to maim, disfigure, or kill O'Brien.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*